Union County Court of Common Pleas.

HUGO W. BOBERTZ, PETITIONER-APPELLANT, v. TOWNSHIP OF HILLSIDE, RESPONDENT-APPELLEE.

Decided May 15, 1940.

For the petitioner-appellant, *Kellogg & Chance.*

For the respondent-appellee, *Nathan & Isadore Rabinowitz.*

See opinion of Workmen's Compensation Bureau, *Bobertz* v. *Hillside,* 17 *N. J. Mis. R.* 396.

McGRATH, C. P. J. Petitioner was employed as a sewer inspector by the township of Hillside, a large residential and manufacturing suburb lying between Elizabeth and Newark. His petition alleges that he "was in a manhole and slipped and sewerage material went into petitioner's face and mouth" and "as a result of getting sewage into his mouth he was taken ill with typhoid fever," &c., and claim was made for all disability and expenses "due to the accident." The referee in dismissing the petition said: "I cannot find from the evidence that there was any more probability that the typhoid was contracted by the petitioner in the course of his work in the sewer than from eating or drinking something," &c.

"The proofs in this case are insufficient and not persuasive that the injury occurred by reason of the services rendered in the employment." This, of course, was not the point involved, since the question was not merely whether petitioner had contracted the disease in the course of his work but whether in the course of his work he had suffered the accident which he set forth in his petition and on which he relied to prove the cause of his infection. *Bollinger* v. *Wagaraw*, 122 *N. J. L.* 512; 6 *Atl. Rep.* (2d) 396.

The referee says: "There was no testimony showing that any of the sewage in the sewer systems of Hillside had ever been analyzed or that there was anything in the particular sewage that might justify the conclusion that petitioner contracted this disease therefrom." However, all the physicians who testified on the subject agreed that sewer water and human feces are common sources of typhoid, and it is undenied that this particular sewer serves the neighborhood for the purposes of carrying off the filth and human excreta of all kinds from the dwellings and factories and streets which it serves.

As to the accident, it is proved by Bobertz's testimony and no one was produced to say that it did not happen. It is an accident which was likely to happen and there is nothing incredible in his story. It was his business to go into the sewer if it was stopped up, and in addition to his sworn testimony he produced a record and testified without objection that the record showed that he was in the sewer on September 28th, 1937, the date of the accident as alleged in the petition. At no time did he make any statement that it did not happen, and while there are discrepancies in his statements previous to the filing of the petition, it must be remembered that the man was stricken with a particularly virulent typhoid from October 9th, 1937, to March 12th, 1938; and that he was in the hospital and confined to his home until May 3d, 1938, and that he still suffers some of its effects; that in addition to typhoid he had pneumonia and empyema and was compelled to undergo an operation; he was reduced almost to skeletal appearance, and was not able to go back to work until June, 1938, nearly eight months later. His statements must be considered in the light of his condition.

The alleged discrepancy is that he did not tell his doctors and the insurance company and at the informal hearing that the "accident" occurred on September 28th, 1937, but placed it at a later date, *i. e.*, October 9th, 1937, the date on which he was actually stricken while working a second time in the same sewer. An "accident" has a technical meaning which even lawyers sometimes debate, and the layman would naturally regard as the "accident" the occurrence of October 9th, when he was actually stricken, rather than the fall in the sewer on September 28th which was in itself trivial, and left no physical or other immediate results. He did not know when he slipped in the sewer on September 28th, 1937, that it would result in typhoid and would naturally regard his experience on October 9th, when the disease first manifested itself, as the real inception of his infection. He should not be penalized for not knowing something which could only be developed by investigation, particularly when during a great deal of the time he was suffering intensely from his experience.

The referee, who heard the testimony and saw the witnesses, did not find that there was no accident and the accident is supported by the record. I find that the petitioner did sustain the accident as alleged in his petition on September 28th, 1937, that his employer had notice of the injury and that it arose out of and in the course of his employment.

As to the cause of the typhoid, it is stressed by all the physicians on both sides that contaminated water is a common source of typhoid. Dr. Meehan, for the respondent, says: "The most common source of typhoid fever is water, and it is the classical water borne disease." Again: "Many people working in sewers contract typhoid fever? Yes, sir; they would." He also gives human excreta as one of the sources of the germ, and says: "Urine contains that organism." (Page 118 of testimony.) Dr. Cucinella, for the respondent, says: "The sources of infection are chiefly the things that are ingested such as milk, water, or things that we come in contact with such as sewage, flies and fingers, or anything that may become contaminated by the typhoid bacillus." On page 130 he stresses the point that human feces is chiefly the source of typhoid. "You will find that typhoid is very

prevalent in countries where this disposal of the house garbage and human feces is faulty."

All the doctors agree that human excreta is a source of typhoid (Dr. Konzelmann, page 58; Dr. Casilli, pages 80, 82, 87; Dr. Meehan, pages 104, 115, 118; Dr. Cucinella, pages 121, 130) and a thorough consideration of the testimony in this case convinces me that the petitioner has established that the most probable source of the typhoid in this case was the infection by the sewer water on September 28th, 1937. It is also significant that the disease developed within the normal period of incubation after the occurrence of September 28th, 1937. True, there are other sources of typhoid, such as contaminated drinking water, &c., but there is no proof that petitioner came into contact with any of them. There is proof, however, that he did come into contact with sewer water, contaminated not only with the filth washed down from streets but also with human feces and excreta of all kinds from the neighboring houses and factories.

There is no proof in this case that the drinking water or the food or the milk which petitioner consumed was in any way contaminated. Flies and other insects are also a source but only if they contaminate a person's food (page 88) and there is no proof that they did so in this case. "Carriers" may also carry the disease, but there is no proof that they did; neither is there any proof that petitioner, by personal uncleanliness, contaminated himself. The hypothesis that the contaminated sewer water was the cause is the only one supported by actual proof of contamination and personal contact. With modern control of drinking water, milk, and to a lesser extent food and insects, typhoid has become a rare disease (page 131) and we would naturally expect to find its cause, not in the normal routine of protected urban life, but in some abnormal occurrence, such as the experience of petitioner in this case. Typhoid is both a contagious and communicable disease and one likely to become epidemic if there is a common source. There is no evidence that anyone else in Hillside or in Mr. Bobertz's household suffered from it. The theory of a "carrier" was eliminated by Dr. Casilli's testimony (page 72) and is remote in any case, and the sug-

gestion that petitioner contaminated himself by fingers is even more remote and unsupported by any proof whatever. Nor is there any proof that Bobertz is a person abnormally susceptible to typhoid fever; it is unquestioned that he enjoyed good health for eighteen years before the accident.

The weight of medical authority is very much in petitioner's favor. Dr. Konzelmann, his treating physician, supports his claim and so does Dr. Casilli, who also treated him and who is the director of laboratories of Elizabeth General Hospital and St. Elizabeth's Hospital, director of laboratories of the Board of Health of Elizabeth, New Jersey, and part time director of Alexian Brothers' and Perth Amboy Hospitals, and a specialist in pathology and bacteriology. His opinion is supported to a large extent by bacteriological investigations as to the cause of the infection and he gave the question serious consideration for the purpose of treatment. On the other hand, Dr. Meehan, for the respondent, is a general practitioner who has studied these diseases as a "hobby." He did not examine Mr. Bobertz, nor consult the records of the Board of Health of Hillside, nor make any investigation. Dr. Cucinella, for the respondent, said: "The last case I saw of typhoid fever was probably fifteen years ago." His "examination consisted mostly of going over blood tests, and so forth, and records at the hospital." An exhaustive examination was inadvisable because petitioner had been reduced to an extremely weakened condition, was almost skeletal in appearance.

Both doctors for respondent base their opinions on "certainties" but this is not the legal test. A court room is not a laboratory and even an analysis of the sewer water after the infection arose would be open to the objection that it was too remote as well as to the credibility and ability of the analyst. Disagreement among doctors as to the analyses and diagnoses is common and it is not necessary that the mind of the trier of facts should be free from all doubt; it is his duty to decide in favor of the party on whose side the weight of evidence preponderates, and according to the reasonable probability of truth. Nor do the other possible or probable causes have to be excluded beyond doubt. *Jackson* v. *Delaware,*

*Lackawanna and Western Railroad,* 111 *N. J. L.* 487 (at *p.* 490) ; 170 *Atl. Rep.* 22; *Borosayvich* v. *Celluloid, &c.,* 118 *N. J. L.* 392; 193 *Atl. Rep.* 557. Typhoid resulting from an accident is compensable. 71 *C. J.* 598, *note* 95. See, also, *Bollinger* v. *Wagaraw, supra.* Nor is this rule open to the objection that the court is "drawing inference upon inference." *Jackson* v. *Delaware, Lackawanna and Western Railroad,* 111 *N. J. L.* 487 (at *p.* 491) ; 170 *Atl. Rep.* 22. Applying these principles, I find that the petitioner's infection was the direct and proximate result of the accident of September 28th, 1937, and that the aforesaid typhoid fever became complicated with other ailments and in the endeavor to relieve petitioner's condition, operation became necessary and was performed, and the said typhoid fever and complicating ailments are compensable injury by accident within the terms and contemplation of the compensation laws of the State of New Jersey.

As a result of the compensable injury as aforesaid, the petitioner was confined to the Alexian Brothers' Hospital for a long period of time and was temporarily and totally disabled from October 9th, 1937, to June 15th, 1938, a period of thirty-five and three-sevenths weeks. He returned for duty at his former work for the respondent on the last named date.

As a further result of the said accidental injury, the petitioner sustained a certain percentage of permanent disability which under the evidence is found to amount to ten per cent. of total and permanent disability for which there should be a recovery.

The court below made no finding on the bills and charges submitted and the parties have stipulated that these should be submitted to the discretion of this court. I find that in the endeavor to effect a cure of petitioner's aforesaid injury, medical, surgical and hospital services were rendered by Dr. Henry J. Konzelmann, Dr. Richard H. Dieffenbach, Dr. Arthur R. Casilli and Dr. Thomas F. Walsh, Alexian Brothers' Hospital and various registered nurses at the aforesaid hospital. Under the peculiar circumstances of this case, the aforesaid services were necessary and the fees for the same hereinafter specified are reasonable, and since the employer

did not furnish any medical or hospital services or offer to do so, but on the contrary denied the happening of an accident or any liability to the petitioner under the Compensation law, the employer is required to pay for the aforesaid services and the amounts for the same, hereinafter specified, are found properly assessable against the respondent-appellee, which is ordered to pay for the same.

The employer had knowledge of the absence of petitioner from his work and made no point on the question of notice of injury in either the Workmen's Compensation Bureau or in this court and I find that he had legal notice of the injury within the contemplation of the act.

It was necessary for the proper presentation of the case before the Workmen's Compensation Bureau for the petitioner-appellant to offer expert testimony, which expert testimony was provided by Dr. Henry J. Konzelmann and Dr. Arthur R. Casilli. For each of these physicians there is allowed a fee of $50, to be paid by the respondent-appellee.

It was necessary for the proper presentation of petitioner-appellant's case before the Workmen's Compensation Bureau that he be represented by counsel and for their services in behalf of petitioner-appellant before the Workmen's Compensation Bureau, Messrs. Kellogg & Chance are to be paid a fee of $300 by the respondent-appellee.

It was further necessary for the petitioner-appellant to be represented by counsel in connection with this appeal and the said Messrs. Kellogg & Chance in addition to the foregoing counsel fee are to be paid for their services on behalf of the petitioner-appellant in this court, an additional attorney fee of $200, to be paid by the respondent-appellee.

That stenographic charges incurred in the hearing before the Department of Labor, Workmen's Compensation Bureau, are justly and properly assessable against the respondent-appellee.

It is agreed that petitioner was receiving wages at the time of the accident in the amount of $145.95 every two weeks. Accordingly his compensation rate is subject to the maximum of $20 per week. This amounts to thirty-five and three-sevenths weeks, from October 9th, 1937, to June 15th, 1938, a total of $908.57, all of which has been paid.

Since the proof is that he received wages in full during his illness, there will be no judgment for temporary disability. As to permanent disability, which continues, there is no proof of payment nor claim of such payment in the record. The petition and answer and testimony show that the money paid by respondent was as wages only and the answer specifically states that no payments were made for permanent compensation; in fact, it denied that any compensation was due. It is inferable that whatever payments were made were voluntary and in a spirit of benevolence during his illness and cannot be recovered or credited against the amount due for permanent disability. There is no evidence that they were paid as permanent disability and the statute does not so regard them. *DiMeglio* v. *Slonk Construction Co.*, 121 *N. J. L.* 370; 2 *Atl. Rep. (2d)* 470.

Costs, including the foregoing allowances, will be allowed to the petitioner-appellant.

Wherefore, it is, * * * ordered that the petitioner-appellant recover judgment final as follows: