LILLIAN M. JACKSON, ADMINISTRATRIX AD PROSEQUEN-
DUM OF THE ESTATE OF ROBERT JACKSON, DE-
CEASED, PLAINTIFF-APPELLANT, v. THE DELAWARE,
LACKAWANNA AND WESTERN RAILROAD COMPANY,
A CORPORATION, DEFENDANT-RESPONDENT.

Submitted May 26, 1933—Decided September 27, 1933.

For the appellant, *Edward A. Markley* and *Charles W. Broadhurst.*

For the respondent, *Frederic B. Scott.*

The opinion of the court was delivered by

HEHER, J. Plaintiff appeals from a judgment of nonsuit in an action instituted to recover the damages sustained, it is said, by the next of kin of plaintiff's intestate, by reason of his death as a result of the wrongful act, neglect or default of respondent.

The nonsuit was erroneous. A motion for a nonsuit admits the truth of the plaintiff's evidence, and of every inference of fact that can be legitimately drawn therefrom, but denies its sufficiency in law. Where the evidence, and the inferences reasonably arising therefrom, will support a verdict for the plaintiff, a motion for a nonsuit must be denied. *Weston Co.* v. *Benecke,* 82 *N. J. L.* 445; *Dayton* v. *Boettner, Ibid.* 421; *Fox* v. *Great Atlantic and Pacific Tea Co.,* 84 *Id.* 726; *Kerner* v. *Zerr,* 103 *Id.* 424.

The evidence adduced by appellant tended to establish the following matters of fact: Decedent, a government inspector, on December 16th, 1929, at four-forty-five P. M., boarded one of respondent's trains in Hoboken, to be transported to its Grove street station in East Orange. He had devoted the day to the performance of his official duties at the Hoboken piers. He was apparently in good health, and of normal mind. He was accompanied to East Orange by a friend, Thomas B. Lennon. They sat together, occupying a seat about midway in the second or third rear car of the train. When the train reached the Grove street station, decedent arose from his seat, and was followed by Lennon, whose destination at the moment was the smoking car ahead. It was not the latter's purpose to alight at this station. They proceeded towards the front platform of the car, with Lennon immediately behind decedent. The train had come to a complete stop when they stepped from the car seat to the aisle. When decedent reached the platform, he turned to the right and began a descent of

the car steps to the station platform. Lennon continued across the car platform to the car ahead. He testified that as he "started to go through this vestibule or through the platform the train started off." His testimony clearly furnished a basis for the inference that decedent was thrown from the car steps by a sudden and violent movement of the train. "*Q.* How did it start off? *A.* Well, an awful jerk happened there; because of the jerk, the pressure of it threw me right through the doors, almost, I landed up against this other side and held on. *Q.* What kind of a night was it; did you notice? *A.* Very bad night. *Q.* By that you mean it was rainy, stormy? *A.* Yes, sir. *Q.* Now, can you tell me about how far you were from this door, from the door that you were going to go into when the train started, as you described it. How far you had gotten across the two platforms of the car when the train started? *A.* Why, I just about stepped through, you know, from the platform, to go through when this jerk happened. *Q.* You say it threw you off your balance into the car ahead? *A.* Threw me up against the car in front. *Q.* Can you describe this jerk or jolt that you say there was; how would you describe it? *A.* Well, I don't know how I would describe it. I know it was severe enough to knock me off balance. *Q.* You say he [decedent] preceded you when you were going out of the door. He went out of the door and started to go down. Go down the steps? *A.* Yes, sir. *Q.* You were right behind him? *A.* Yes, sir. *Q.* Now, when you last saw him, where was he on the steps of the coach? *A.* That is pretty hard to say. *Q.* Was he on the first step? *A.* I can't say. *Q.* He was going down the steps; that is the best you can say? *A.* That is the best I can say. *Q.* Can you tell us how many steps you had taken from the time you saw Mr. Jackson start down the steps and the time this lurch came? *A.* Well, all I can say is a couple of steps. I can't say to count them rightly."

The train continued on. Lennon proceeded into the car ahead, unaware that a mishap had befallen decedent. There was evidence to support a finding that shortly thereafter, at about five-fifty-seven P. M., decedent's body was found on the

roadbed, between the northerly rail of the west-bound track and the station platform to which he was descending when Lennon last saw him. Death was caused by a fracture of the skull. The distance between this rail and the platform was three feet. The platform level was eighteen inches above the roadbed. Decedent's hat and artificial teeth were found near the body. There are four tracks at this point, and a station platform, the east-bound, on the other side. In the center of the roadbed, running parallel with the tracks, there was a fence to prevent the passage of people from one platform to the other.

Respondent argues that the nonsuit was proper because there was no proof of its negligence, or of facts to support an inference of negligence. The trial judge ruled, and respondent now insists, that the jury could not find such negligence without "drawing an inference upon an inference," and that this is not permissible. There is no such rule. If there were, hardly a single trial could be adequately prosecuted. *State* v. *Fiore,* 85 *N. J. L.* 311, 320; 1 *Wigm. Ev.* (*2d ed.*) § 41. Circumstantial evidence is of two kinds, namely, *certain,* or that from which the conclusion in question *necessarily* follows; and *uncertain,* or that from which the conclusion does not necessarily follow, but is *probable* only, and is obtained by a process of reasoning. In civil cases, where the mischief of an erroneous conclusion is not deemed remediless, it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of the evidence preponderates, and according to the reasonable probability of truth. But in criminal cases, because of the more serious and irreparable nature of the consequences of a wrong decision, the jurors are required to be satisfied beyond any reasonable doubt of the guilt of the accused, or it is their duty to acquit him, the charge not being proved by that higher degree of evidence which the law demands. In civil cases, it is sufficient if the evidence, on the whole, agrees with and supports the hypothesis which it is adduced to prove; but in criminal cases it must exclude every other hypothesis but that of the guilt of the accused. In both

cases a verdict may well be founded on circumstances alone; and these often lead to a conclusion far more satisfactory than direct evidence can produce. 1 *Greenl. Evid.* § 13-a. It is true that mere guess or conjecture cannot be substituted for legal proof, but it is difficult to mark with precision the line which separates the just and reasonable inference from mere conjecture or surmise. It is sufficient if the circumstantial evidence be such as to afford a fair and reasonable presumption of the facts inferred. "The claimed conclusion from the offered fact must be a probable or a more probable hypothesis, with reference to the possibility of other hypothesis." 1 *Wigm. Ev.* (*2d ed.*) § 38.

In *Austin* v. *Pennsylvania Railroad Co.*, 82 *N. J. L.* 416, Mr. Justice Swayze, in applying the apposite rule, said: "The defendant appeals to the well-established rule that it is not enough for the plaintiff to prove the possible responsibility of the defendant, but he must show the existence of such circumstances as justify the inference of fault on the part of the defendant, and exclude the inference that the damage was due to a cause for which the defendant was not responsible. That is the rule, and the plaintiff must prove circumstances which render it probable and not merely possible that the defendant is at fault. But when it is said that the circumstances must exclude the inference that the damage was due to a cause for which the defendant is not responsible, it is not meant to change the rule that ordinarily governs in civil cases, and to force the plaintiff to exclude such inference beyond doubt. All that is required is that the circumstances should be so strong that a jury might properly on grounds of *probability rather than of certainly* exclude the inference favorable to the defendant. The question arises only where the evidence is circumstantial, and where probability may be all that is attainable."

Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil causes, is defined as "a mere preponderance of probabilities, and, therefore, a sufficient basis of decision." 1 *Best Ev.* 135. When a fact cannot itself be demonstrated, that which comes nearest

to proof of it is proof of the circumstances necessarily or usually attending it; this proof creates a presumption which is relied upon till the contrary is proved. 3 *Bl. Com.* 371. Analogous cases are: *Suburban Electric Co.* v. *Nugent,* 58 *N. J. L.* 658; *Vosler* v. *Delaware, Lackawanna and Western Railroad Co.,* 77 *Id.* 727; *Hannon* v. *Delaware, Lackawanna and Western Railroad Co.,* 98 *Id.* 191; *Geslak* v. *Krause,* 108 *Id.* 350; *Eastlack* v. *Mitten,* 109 *Id.* 556. When negligence may reasonably and legitimately be inferred from the evidence, it is for the jury to say whether from such evidence negligence ought to be inferred. *Newark Passenger Railway Co.* v. *Block,* 55 *Id.* 605; *Auer* v. *Sinclair Refining Co.,* 103 *Id.* 372; *Kerner* v. *Zerr, supra; Egan* v. *Sheffield Farms Co.,* 107 *N. J. L.* 325; *S. Kosson & Sons* v. *Union Building, &c., Co.,* 108 *Id.* 111. Where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. *Finnegan* v. *The Goerke Co.,* 106 *Id.* 59; *Bennett* v. *Busch,* 75 *N. J. L.* 240.

Respondent owed decedent the duty of exercising a high degree of care for his safety. The movement of the train, in the manner indicated by the testimony, while decedent was descending the car steps, or alighting therefrom, would clearly support a finding of negligence. The evidence presented was such as to afford a just and reasonable presumption of this fact. Lennon testified that decedent had descended "a couple of steps," when the train moved with such sudden violence as to throw him "right through the doors, almost," against the car ahead. If this testimony be accepted as establishing the fact, it follows, logically and reasonably, that decedent, while on the steps, or in the act of alighting therefrom, lost his balance as a result of this unusual movement of the train, and thereby suffered the injuries which resulted in his death. That is the probable, if not an irresistible, hypothesis. There is a presumption against both suicide and negligence.

Judgment reversed.

*For affirmance*—None.

