JOSEPH LIGENZA, PROSECUTOR, v. WHITE FOUNDRY CO., INC.. RESPONDENT.

Argued October 7, 1947—Decided January 19, 1948.

Before Justices Donges, Colie and Eastwood.

For the prosecutor, *Hiram Elfenbein*.

For the respondent, *Kalisch & Kalisch* (*Isidor Kalisch,* of counsel).

The opinion of the court was delivered by

Eastwood, J. Prosecutor, Joseph Ligenza, brings *certiorari* to review the judgment of the Hudson County Court of Common Pleas reducing an award of the Workmen's Compensation Bureau in his favor from 100% permanent disability to 25% partial permanent disability. Prosecutor, in his claim petition filed on June 1st, 1945, alleged that he had been injured as the result of an accident while engaged as a cupola attendant at respondent's foundry on December 21st, 1944. The original claim petition specified that prosecutor had suffered permanent injury to his back and legs and other parts of his body. An amended claim petition was filed on November 26th, 1945, wherein prosecutor alleged that he had suffered permanent injury to his "back, buttocks, legs, together with Parkinson's syndrome (precipitated, aggravated by trauma) neurosis."

. The Bureau determined that prosecutor had suffered an accident arising out of and in the course of his employment with the respondent; that he had been paid temporary com-

pensation for a period of 21 3/7 weeks in the amount of $428.57; and that prosecutor's permanent disability was 100% of permanent total. Judgment was accordingly entered for total permanent disability for a period of 400 weeks, compensation at $20 per week or a total of $8,000. On appeal from the determination of the Bureau to the Hudson County Court of Common Pleas, that court found, as a matter of fact, that the prosecutor had sustained an injury to his back to the extent of 25% of total permanent disability and the award of the Bureau was accordingly reduced.

Factually, it appears that the prosecutor was sixty-five years of age and had been employed by the respondent as a cupola attendant at its foundry for a period of approximately thirty-two years prior to the accident on December 21st, 1944. His duties included keeping the cupola charged with coke during the smelting process, chipping slag, tapping the charge with a heavy iron bar at the time of pouring the molten metal from the oven, lifting an iron door, hinged at the bottom of the cupola, weighing about 500 or 600 pounds, with the aid of a co-worker and other laborious work. Prosecutor testified that he and his co-worker would lower themselves to the floor by bending their knees gradually and then with their backs would lift the hinged door with a lifting motion, straightening themselves upward by straightening out their knees. On the day of the alleged accident, prosecutor and his co-worker were so engaged in raising the door when he felt something snap in his back and he dropped to the ground. He was taken to a hospital in an ambulance and was treated there by Dr. Mears, who examined him and gave him some pills. He stayed at the hospital a day and a half and then went home for Christmas. At his home, he called another physician, Dr. Piskorski, who gave him some medicine and applied some plaster to his back. At the hospital, the following findings were disclosed:

"Conclusions: The findings of most note are the signs of moderate dilatation in the descending portion of the thoracic aorta and the accentuated pulmonary markings on both sides that are believed to be related to chronic bronchial and pulmonary infection or irritation.

"Lumbar spine: There is a spondylitis of the marginal type involving the lumbar vertebra. Evidence of bone injury was not demonstrated."

It was testified by prosecutor that on May 5th, 1944, he had been involved in another accident at respondent's foundry when he had burned his foot. His claim was settled in the compensation court, whereby he received eight weeks compensation for temporary disability and additional compensation of 10% loss of use of the foot. Following this incident, prosecutor returned to his work and apparently felt well and worked steadily until the occurrence of December 21st, 1944.

Dr. Mears, a company doctor, diagnosed the prosecutor's injury as an acute right sacro-lumbar sprain spondylitis of dorsal and lumbar spinal column. Prosecutor continued under the care of Dr. Mears until May 18th, 1945, and was paid temporary disability compensation until May 20th, 1945, when he was told by the doctor to return to the foundry and ask for light work. None being available, prosecutor returned to his home. He has not worked since.

All the medical experts produced on behalf of prosecutor and respondent agree that prosecutor is now suffering from Parkinson's syndrome, a disease commonly known as paralysis agitans, which is characterized as a condition of the nervous system, of a slow and progressive nature evidenced by trembling of the hands and at times the legs and feet, also by rigidity of the muscles of the extremeties, and then advancing to the trunk, so that eventually it produces a stiff spastic gait, and that subsequently the posture of the patient's body is changed to one of forward flexion of the trunk and head, and that gait eventually becomes one of propulsion with difficulty in sustaining balance. The testimony further established that prosecutor at the time of the incident of December 21st, 1944, was suffering from an underlying osteoarthritis, and other associated conditions characterized as oral sepsis, arteriosclerosis, chronic arthritis and evidences of physical degeneration. As previously stated, the medical experts are agreed that all of the foregoing conditions existed at the time the case came to trial. They differ violently on the question of whether the Parkinson's disease, which incidentally forms the basis of the

greater degree of prosecutor's disability, is causally related to the accident of December 21st, 1944. As characterized by the learned court below, "Petitioner's medical experts say 'yes,' respondent's say 'no.'"

It is admitted by the medical experts that the true and exact cause of Parkinson's disease is, to say the least, obscure, and for all practical purposes may be said to be unknown. Certain of the authorities relied upon by the experts associate Parkinson's disease with trauma, particularly as a precipitating and aggravating factor. Even in this respect the authorities are not in accord. Some would limit injury precipitating or aggravating existing Parkinson's disease to trauma of the brain in the region of the basal ganglia. Others seem not to specify the location of traumatic injury necessary to precipitate or aggravate the syndrome. To confuse matters further, the testifying experts in many respects do not even agree with the hypotheses advanced by the written authorities. In short, parkinsonism, both as to its origin and with respect to precipitating and aggravating causes, is shrouded in medical mystery. Prosecutor's experts definitely associate the parkinsonism as having causal relation to prosecutor's injury of December 21st, 1944. On the other hand, respondent's experts positively deny any causal relation and attribute prosecutor's parkinsonism to pre-existing conditions, or as stated by the expert, Dr. Ruoff, "that the entire physical examination pointed in just one direction, namely, a well-advanced hypertension, a well-advanced arthritis of the spine, a hideous oral hygiene with infection of the gum margins and superimposed thereon a chest infection." Dr. Ruoff further stated that one of the most common causes for parkinsonism is arteriosclerosis.

We are thus confronted with a factual question sought to be established by testimony that, to say the least, is highly speculative and conjectural. It is axiomatic that disability suffered in the course of employment, arising from natural causes unrelated to an industrial mishap, is not compensable. To merit that classification, it must be the proximate result of an accident within the statutory sense (*Macko* v. *Raritan Valley Farms, Inc.*, 131 *N. J. L.* 283; 35 *Atl. Rep.* (2d)

872), or as has been stated, the burden is upon the petitioner to prove that the injury was a result of an accident arising out of and in the course of his employment. This principle is so well established as to require no citation of authority. *Freedman* v. *Essex Chair Co.*, 135 N. J. L. 512; 52 *Atl. Rep.* (*2d*) 690. An award of compensation cannot rest upon imagination, surmise or conjecture, or upon a choice equally compatible with the evidence. The testimony reveals that prosecutor was unquestionably afflicted with hypertension, arthritis of the spine, an infected oral cavity and a chest infection, as well as arteriosclerosis of an advanced nature. These afflictions may as well be said to have been the competent producing cause of the Parkinson's syndrome as well as the traumatic injury to prosecutor's spine suffered on December 21st, 1944. The court cannot speculate as to which of several causes may have produced the injury complained of by an employee. *Gilbert* v. *Gilbert Machine Works, Inc.*, 122 N. J. L. 533; 6 *Atl. Rep.* (*2d*) 213. It is said, however, that the Parkinson's syndrome with which prosecutor is now afflicted, was precipitated and aggravated by the injury of December 21st, 1944. Be that as it may, the *onus* still remains upon the injured employee to establish his case by a preponderance of the probabilities according to the experience of mankind. *Jones* v. *Newark Terminal and Transportation Co.*, 128 N. J. L. 190; 24 *Atl. Rep.* (*2d*) 564. We have scanned the testimony in vain and are of the opinion that the prosecutor herein has failed to present sufficient evidence to sustain the burden of proof that the Parkinson's disease, from which he suffers, is causally connected with the accident of December 21st, 1944. The situation is analogous to that prevailing in the case of *Schlegel* v. *H. Baron & Co.*, 130 N. J. L. 611; 34 *Atl. Rep.* (*2d*) 132, wherein, Mr. Justice Heher, speaking for this court, in a case involving a coronary thrombosis, alleged to have been suffered as a result of an accident, stated the rule as follows:

"Concededly, the claimant, who was 59 years of age, suffered a coronary thrombosis. This is a condition that ordinarily ensues from coronary sclerosis or other morbid state. At all events, the presumption is that it was due solely to disease;

and the *onus* is on claimant to establish that the asserted accident was at least a contributory cause without which the occlusion would not have occurred."

Clearly, the testimony adduced herein falls far short of the rule of proof as enunciated.

Aside from prosecutor's neurological disability as evidenced by the Parkinson's syndrome, we are of the opinion that prosecutor has suffered a degree of partial permanent disability directly and causally related to the accident, which has been satisfactorily proved by competent evidence. We hold that 25% of total permanent disability as determined by the Pleas is reasonable and established by the proofs.

The judgment below is accordingly affirmed.