7 N.J. Super. 54 (1950)
71 A.2d 894
AGNES SCHUST, PLAINTIFF-APPELLANT,
v.
WRIGHT AERONAUTICAL CORP., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1950.
Decided March 10, 1950.
*55 Before Judges JACOBS, McGEEHAN and EASTWOOD.
Mr. Aaron Gordon argued the cause for the plaintiff-appellant (Mr. Saul Mendelson, attorney).
Mr. John W. Taylor, attorney for and of counsel with defendant-respondent, argued the cause.
The opinion of the court was delivered by EASTWOOD, J.A.D.
The Workmen's Compensation Bureau dismissed plaintiff's claim for compensation for total permanent disability. On appeal, the Bergen County Court affirmed, from which latter judgment plaintiff appeals.
The issue for our determination is whether the multiple sclerosis from which plaintiff suffers was precipitated or aggravated by her accident. We think it should be resolved favorably to plaintiff.
It is conceded that the accident arose out of and during the course of plaintiff's employment. There is a divergence of opinion, however, as to the causal relationship between the accident and plaintiff's disability.
The plaintiff had been in the employ of the defendant as a typist approximately five years prior to her accident, which occurred on November 5, 1946. She was twenty-two years of age when the accident occurred in the following manner: While sitting on her stenographer's swivel chair, performing the normal duties of her employment, she "pushed it back and the chair seemed to be sliding all right and all of a sudden it hit something and it stopped and the next thing I knew, I was on the floor," having fallen on her back or buttocks, toward the left side; that "after I had fallen it seemed to me that there was a bone sticking out of my back." Immediately following the accident, she suffered continuing and injurious physical results, which became progressively worse. Although she continued her employment with the defendant corporation, she was unable to perform the same duties, because of severe headaches, failing eyesight and alleged continual backache running down the back of her legs to her *56 ankles, but principally the left side more than the right; she was transferred to another position and after several months was compelled to give up all employment. At the time of the hearing before the Bureau, it was conceded that she was permanently and totally disabled.
Prior to the accident, the plaintiff had no knowledge of any impaired physical condition, other than occasional headaches and an eye condition. There is no proof that her headaches were other than those that one normally would suffer. As to her eye condition, she was examined on several occasions by optomtrists, who testified that they found no evidence of any organic difficulty. Furthermore, it was undisputed that plaintiff had been employed by the defendant since September 3, 1941; that she had been given a medical examination by the corporation's doctor before she was hired; that during the war years, each week she typed ten hours a day for four days and eight hours a day for three days.
The medical experts conceded at the hearing that the employee was suffering from multiple sclerosis, and the indications were that this condition had been dormant prior to the accident. Unfortunately, here, as in many similar cases, we are confronted with diametrically opposed medical testimony proffered by the respective parties. Plaintiff's medical experts testified that, in their opinion, her total disability is causally related to her accident, while defendant's medical experts testified contrariwise. The plaintiff's medical experts testified that the accident and resultant injury aggravated the latent condition of multiple sclerosis from which plaintiff suffered prior to the accident. The defendant's medical experts testified that multiple sclerosis, particularly in a young person, may develop suddenly and progress rapidly thereafter and that the accident suffered by the plaintiff did not contribute in any respect to the causation of her multiple sclerosis nor to an aggravation thereof.
The medical witnesses were in agreement that multiple sclerosis is a degenerative and incurable disease of the central nervous system, involving the myelin sheaths covering the nerves, characterized by exacerbations and remissions; that *57 its cause is not definitely known, but it cannot be originated by a blow or physical strain. They were in disagreement as to whether trauma can precipitate or aggravate multiple sclerosis. Those who subscribe to the trauma theory generally agree that the blow must be applied to the spinal cord or brain and of sufficient force to cause the organic nerve damage. In this case, plaintiff's medical experts testified that the trauma suffered by plaintiff did precipitate and aggravate the theretofore dormant multiple sclerosis with which she was afflicted. Defendant's medical experts disputed that conclusion and asserted that plaintiff's injury was merely "A gluteal sprain, which involves blood vessels in the skin" and "has nothing to do with the blood vessels inside of the spinal column."
Circumstances are presented here from which the employee's physical condition prior to the accident revealed only occasional headaches and an eye condition necessitating the use of glasses  circumstances under which the employee had worked regularly and satisfactorily for approximately five years. Immediately after the accident, the employee suffered sensations of pain and consequent incapacity, as indicated by her testimony and that of her mother, proof of the treatments at defendant's plant hospital, as well as medical and other treatments, during the days and weeks of her progressively deteriorating condition. It is conceded that Miss Schust has become a hopeless and helpless invalid, a victim of multiple sclerosis.
If we are to adopt defendant's contentions, we must of necessity eliminate from our consideration the actualities presented by the proofs. Here, we have a young lady, apparently enjoying reasonably good health, working almost uninterruptedly for the defendant for several years prior to the accident, performing her duties as a typist in a satisfactory manner, at times working sixty-four hours during a seven-day week; suddenly, she is a victim of an accident, causing her immediate painful injury; notwithstanding immediate and continuing treatments heretofore mentioned, physiologically she deteriorates so rapidly and progressively that within a *58 comparatively brief period of time she becomes totally and permanently disabled. This retrogression is concededly attributable to the development of her disease and where, as here, her physical deterioration so closely followed an event competent to produce that effect, it is difficult for us to escape the inference of a causal connection between the two, nor is such inference overcome by mere medical theories. For this view, we have judicial support in the case of Auten v. Johnston, 115 N.J.L. 71 (Sup. Ct. 1935), wherein Mr. Justice Heher propounded the principle that the development of a serious physical impairment soon after an accident, without satisfactory evidence of a dissociated cause of the impairment, together with its rapid progress thereafter, "* * * bespeak the relationship of cause and effect; it is persuasive that this condition, traumatic in its origin, was the result of the * * * injury sustained in the accident. * * *" The case of Marshall v. C.F. Mueller Co., 135 N.J.L. 75 (Sup. Ct. 1946), is also in point, stating:
"It is not essential under our Workmen's Compensation Act that the employee be in perfect condition prior to the accident. The employer takes his employees with their mental, emotional, glandular and other physical defects or disabilities, Bernstein Furniture Co. v. Kelly, 114 N.J.L. 500; affirmed, 115 Id. 500, and where a pre-existing disease is caused to become active or to flare up and injury results therefrom, the same is compensable and it is not necessary that the accident should be shown to be the sole contributing cause of the injured condition of the employee. Furferi v. Pennsylvania Railroad Co., 117 Id. 508; Davis v. Lotz, 126 Id. 615; Cavanaugh v. Murphy Varnish Co., 130 Id. 107; affirmed, 131 Id. 163."
Cf. Hercules Powder Co. v. Nieratko, 113 N.J.L. 195 (Sup. Ct. 1934); affirmed, 114 N.J.L. 254 (E. & A. 1935), and Sanderson v. Crucible Steel Corp., 3 N.J. Super. 209 (1949); Galloway v. Ford Motor Co., 7 N.J. Super. 18 (1950).
Defendant asserts that the case of Ligenza v. White Foundry Co., Inc., 136 N.J.L. 436 (Sup. Ct. 1948); affirmed, 137 N.J.L. 610 (E. & A. 1948), is applicable here. We think this case may be easily distinguished from the matter sub judice. In the Ligenza case, it was stated:
*59 "* * * The testimony reveals that prosecutor was unquestionably afflicted with hypertension, arthritis of the spine, an infected oral cavity and a chest infection, as well as arteriosclerosis of an advanced nature. These afflictions may as well be said to have been the competent producing cause of the Parkinson's syndrome as well as the traumatic injury to prosecutor's spine suffered on December 21st, 1944. The court cannot speculate as to which of several causes may have produced the injury complained of by an employee. * * *"
In the case under review, it cannot be said that the proofs as to plaintiff's pre-existing physiological condition create speculation "as to which of several causes may have produced the injury complained of * * *."
On the basis of the proofs here, we conclude that the accident suffered by plaintiff materially aggravated and accelerated the progress of her pre-existing disease and thereby produced the disability suffered by her. As was stated by Mr. Justice Heher in the Nieratko case, supra:
"* * * In civil cases it is sufficient if the circumstantial evidence be such as to afford a fair and reasonable presumption of the facts inferred. Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil causes, is a mere preponderance of probabilities. All that is required is that the claimed conclusion from the offered fact must be a probable or a more probable hypothesis, with reference to the possibility of other hypotheses. The test is probability rather than certainty. Jackson v. Delaware, Lackawanna and Western Railroad Co., 111 N.J.L. 487."
Defendant urges that it is a well settled rule in this State that the factual findings of two concurring tribunals should not, on appeal, be lightly disturbed. While we take cognizance of this generally accepted principle, R. 1:2-20 and 4:2-6 authorize the court, in its discretion, to make "new or amended findings of fact" on a review of any cause involving issues of fact not determined by the verdict of a jury.
The judgment is reversed, with costs.