62 N.J. Super. 117 (1960)
162 A.2d 289
BARBARA STEHLI, PETITIONER-RESPONDENT,
v.
JOHN L. STEHLI AND STEPHEN M. COX, T/A SWANSON & STEHLI, RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1960.
Decided June 23, 1960.
*119 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Theodore W. Geiser argued the cause for respondents-appellants (Messrs. Shaw, Pindar, McElroy, Connell & Foley, attorneys).
Mr. Jerry M. Finn argued the cause for petitioner-respondent (Messrs. Greenstone & Greenstone, attorneys; Mr. Finn, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
The employer appeals from a judgment of the Union County Court reversing an order of dismissal entered by the Deputy Director in the Division of Workmen's Compensation.
The petitioner's deceased husband, John H. Stehli, 63 years of age, was employed by the respondent as an electrician. On June 23, 1955 he had an automobile accident while on his way home after performing certain electrical work for respondent's customer. He died the following morning. The issues are whether the decedent's death was caused or contributed to by the accident and, if so, whether the accident arose out of and in the course of his employment.
Decedent was employed by respondents, John L. Stehli and Stephen M. Cox, trading as Swanson & Stehli. At the time of the accident he was receiving $2 an hour for an 8-hour day. Prior to June 3, 1955 the decedent had been *120 paid $1.75 an hour plus an additional amount for gas and maintenance expenses incurred in the use of his vehicle. The testimony of the respondent discloses that the increase in straight salary of $.25 an hour or $10 a week, occurring three weeks before his death, was actually to compensate the decedent for the use of his automobile and to include payment for traveling "to and from the job," but not for travel time. It was customary for decedent to carry equipment in his automobile, consisting of tools, material and wire, to be used on the job. Decedent's going directly from his home to a job site with the necessary material was beneficial to the firm and made it unnecessary to send another man to the job to deliver the material. At the end of the day, decedent would go directly to his home in Hightstown, N.J., rather than to respondent's place of business in Newark.
On June 23, 1955 he had performed certain electrical work at the home of Jan Krimowicz in Irvington, where he had been working for several days. On the last day he arrived at the Krimowicz premises at approximately 8:15 A.M. and installed a meter board used in the installation of an electrical service. He continued his work until about 4:15 P.M., when he left for home. While driving along Highway 28 in Cranford, N.J., at about 4:45 P.M., he collided with the rear of a street sweeper. A police officer at the scene of the accident observed that decedent was standing beside his damaged car and was "reasonably upset * * * nervous, or shaken." He observed that decedent's automobile sustained damages to its front, radiator, grill and bumper. The police officer testified that the decedent refused medical care. The car was towed away and decedent was taken to police headquarters.
As the result of a telephone call, decedent's daughter and her husband drove to Cranford and found him sitting on a box at a gas station. He was pale and shaken and was "holding his arm against his stomach." On the way to decedent's home "he sat in the back and then laid down all the rest of the way." They arrived at about 7:00 or *121 7:30 P.M. He was met by his wife, Barbara, who testified that he "looked very pale and nervous," and he was holding his stomach and back. He went into the living room and lay on the couch, and did not eat dinner that night. His wife and other members of the family rubbed his back and stomach. At about 6:30 the next morning he was very nervous, and his face alternately flushed and paled. The pain was severe and he continued to hold himself while he went to the bathroom, where he fell on the floor. His wife suggested calling a doctor, but he refused. She applied icepacks to his head, but he passed away.
An autopsy, performed five hours after death, disclosed that decedent suffered from an "acute coronary insufficiency" with evidence of a "recent myocardial infarction" and "fibrinous pericarditis." The examination also revealed a small flesh abrasion over the upper left lumbar area.
Decedent's wife stated that previous to his accident and for over 30 years of their married life he was in good health and normally not a sick man. Decedent had always been actively employed at hard work, having been a farmer, sheet metal worker and, for 25 years preceding his death, an electrician. When he left for work on the morning of June 23, she saw her husband put tools and other electrical appliances belonging to their son into his automobile.
The medical proofs are in dispute. Dr. Walter Nudelman, a specialist in internal medicine and cardiology, testified on behalf of the petitioner, and in response to a hypothetical question said:
"My opinion is that the late Mr. Stehli from the accident, the trauma of the accident, suffered an acute coronary insufficiency and as a result of the acute coronary insufficiency he suffered an infarction of the heart.
Q. Now, what effect does that have upon his life and death? A. Well, an infarction of the heart is a very catastrophic affair. It means that there is actual death of heart tissue, heart muscle; and it can cause instantaneous death, or death within a few hours, or a few days." *122 When asked to explain what the medical etiology would be to produce the coronary insufficiency following this type of accident, he replied:
"Well, the trauma created a condition of shock in the deceased; and that shock, with the decrease in blood pressure, and the decrease in the coronary artery blood flow, caused a coronary insufficiency."
When asked what evidence he had of shock, he replied that the hypothetical question included evidence that decedent was "shaky, tremulous, pale." He conceded on cross-examination that the autopsy revealed decedent had suffered from a pre-existing heart disease. He said the "considerable automobile accident" was a sufficient event to create coronary insufficiency. He testified that it would take at least 8 to 12 hours following an infarction before fibrinous carditis would form and that a man suffering from an infarction would not necessarily have complaints. It was his opinion that coronary insufficiency can exist without symptoms at the time of the accident.
Dr. Asher Yaguda and Dr. Sanford Lewis, both specialists in internal medicine, testified on behalf of the respondents. In reply to hypothetical questions, each expressed the opinion that there was no relationship between decedent's death and the accident. They both disagreed with the statements contained in the autopsy report and death certificate that the cause of death was coronary insufficiency. The reason for their opinion was the finding of the autopsy which indicated that "this man had a myocardial infarction of recent origin." It was the presence of the granulation tissue and the considerable amount of fibrous tissue which indicated to them "that the myocardial infarction was at least two or three weeks of age and probably older," giving rise to the heart disease which ultimately caused Stehli's death.
It was the opinion of Dr. Lewis that Stehli was not in clinical shock, but that he suffered only an "emotional *123 upset." He distinguished between clinical and emotional shock and rejected emotional trauma as a possible cause.
At the conclusion of the testimony, the Deputy Director found that although the decedent "was paid wages only for the time he arrived at the job to the time he left the job," he on occasion used "his car to carry material and tools." He found that this fact justified the conclusion that "any accident occurring while going to or returning from the job is one which arose out of and in the course of his employment." He denied compensation, however, on the ground that the pre-existing cardiovascular pathology was of a progressive nature and was the cause of death independent of and without any relationship to the accident.
On appeal, the County Court agreed that the decedent's carrying of equipment in the car made the journey one that was mutually beneficial and therefore that the accident arose out of and in the course of his employment. But it was determined that the Deputy Director had erred in finding that the accident did not contribute to the decedent's death. The court ruled that petitioner had sustained the burden of proving the requisite causal relation.
On this appeal, it is urged as grounds for reversal that petitioner failed to sustain the burden of proving that decedent's accident was a contributing cause of his death and that the occurrence in which decedent was involved was not an accident arising out of and in the course of his employment.
It was the petitioner's burden to establish by a preponderance of the probabilities that the automobile accident the decedent experienced on June 23 caused or contributed to his death 15 hours later. The proof need not have the attribute of certainty; reasonable probability is the accepted standard of persuasion. Yeomans v. Jersey City, 27 N.J. 496, 509 (1958). Although it is no longer incumbent upon a petitioner in a heart case to demonstrate that the heart injury was the result of "unusual strain," it is still presumed that heart failure is the result of natural *124 physiological causes. Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 138 (1958); McClain v. Woodbury Bd. of Education, 30 N.J. 567, 570 (1959).
The medical experts were in disagreement as to the effect of the accident on decedent's pre-existing heart condition, Dr. Nudelman being of the belief that there "is no question that he had an acute coronary insufficiency as a result of that accident" and that it was "the precipitating event * * * of this man's death," and the respondent's witnesses entertaining the view that there was no relation between the two events.
Decedent had been in apparent good health before the accident and was able to work steadily and rather strenuously at his job without complaint. Almost immediately after the collision with the sweeper, his entire outward appearance changed, he complained of pains in his stomach and back and was compelled to lie down. He remained in distress after arriving home, had no dinner, and his family took turns rubbing his back and stomach. In our opinion, the probability is that it was not purely coincidental that the decedent's complaints began so soon after the accident and that he died the following morning. Galloway v. Ford Motor Co., 5 N.J. 396, 400 (1950); Schust v. Wright Aeronautical Corp., 7 N.J. Super. 54, 58 (App. Div.), certification denied 5 N.J. 177 (1955). Moreover, the theory of Drs. Yaguda and Lewis that the decedent did not die from coronary insufficiency was in direct conflict with the findings of the physician who performed the autopsy. We are well satisfied that although petitioner's case was not possessed of absolute medical certainty, it established by a clear preponderance of the probabilities that the automobile accident did cause or contribute to the decedent's death.
Respondent claims that the automobile collision in which the decedent was involved in Cranford was not a work-connected occurrence within the intendment of the Workmen's Compensation Law. Notwithstanding the conclusions of the two lower tribunals, it is argued that the *125 trip home was a personal activity on the decedent's part, as distinguished from employment activity. The general rule is that an accident sustained by an employee while going to or returning from his place of work is not considered as arising out of and in the course of employment. Moosebrugger v. Prospect Presbyterian Church, 12 N.J. 212, 214 (1953).
There are exceptions to the general rule. One allows compensation where "there was a continued practice or actual course of conduct respecting the transportation, beneficial to both parties, and an accident occurs in the course of it." Jasaitis v. Paterson, 55 N.J. Super. 138, 148 (App. Div. 1959), affirmed 31 N.J. 81 (1959); Rubeo v. Arthur McMullen Co., 117 N.J.L. 574, 578 (E. & A. 1937). In Jasaitis v. Paterson, the Supreme Court affirmed an award for injuries sustained by an off-duty, uniformed police officer while alighting from a bus on his way home, on the ground that, although he had concluded his prescribed duties, the activity served the interests of his employer and was not of unilateral benefit to him. 31 N.J., at pages 85-86.
In the present case, the respondent admitted that the services performed by the decedent in using his car to take equipment to and from the job were beneficial to it. Such use saved the employer the cost and time of sending another man to the job site to deliver the material and cut down on its operating expenses. The mutually beneficent aspect of that use is confirmed by the employer's agreement to pay the decedent $.25 more per hour of actual work because of his travel expenses, in lieu of the separate allowance the decedent had previously been given.
Morris v. Hermann Forwarding Co., 18 N.J. 195 (1955), upon which the respondent principally relies, is distinguishable. In that case a homeward-bound traveling salesman, after alighting from a bus, was struck by an automobile within a block or two of his home. He received no additional compensation for the traveling he was doing when the accident occurred; and he was not in an automobile, *126 much less in one that was used in the service of his employer. It was in the light of these facts and because his trip home resulted in no apparent benefit to the employer that the court ruled that the mere carrying home of work materials would not, in itself, make the trip an employment activity. 18 N.J., at page 200.
The judgment is affirmed.