7 N.J. Super. 18 (1950)
71 A.2d 657
JOHN GALLOWAY, APPELLANT,
v.
FORD MOTOR COMPANY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1950.
Decided March 3, 1950.
*19 Before Judges JACOBS, DONGES and BIGELOW.
Mr. John A. Laird argued the cause for the appellant (Mr. David Roskein, attorney).
Mr. Verling C. Enteman argued the cause for the respondent (Messrs. McCarter, English & Studer, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
This is a workmen's compensation appeal. The Bureau found that the accident had caused *20 100% disability and made an award accordingly. But the County Court determined that the disability was not caused or accelerated by the accident and therefore reversed the award.
The employee is suffering from multiple sclerosis which is a progressive disease of the central nervous system, in which patches of the nerve tissue of the spinal cord degenerate. Earlier multiple sclerosis cases in our reports are Davis v. Lotz, 126 N.J.L. 615 (Sup. Ct. 1941) and Sanderson v. Crucible Steel Corp., 3 N.J. Super. 209 (App. Div. 1949). What causes the disease is unknown, but the expert witnesses agree that it cannot be caused by a blow or a physical strain. They seem also to agree that multiple sclerosis can be stirred into activity, or at least be aggravated, by an external force; but the trauma must be more than a muscle bruise or strain; it must affect the spinal cord itself. It seems to be implicit in the appellant's case that he had the disease in a dormant state before the accident and that it was stirred into activity by the accident. The question before the Bureau and the County Court was whether the evidence supports that theory or whether the appearance and progress of the disease were independent of the accident.
Appellant, with another man, was lifting a piece of iron weighing two or three hundred pounds. As he was raising his end, he felt sharp pains in the lower part of his back. The other man called to him, "`Drop it, drop it,' and it twisted me backward and forward until it buckled me up." Appellant was put on a stretcher and taken to the First Aid station and from there was sent to a hospital. The diagnosis was a severe inflammation of the lower back muscles, a very bad back strain. Appellant left the hospital in twelve days with condition "Improved." Ever since the accident, which happened December 6, 1946, the appellant has been incapacitated. For the first five months or so, his condition may readily be attributed to back strain, except that the effects of the strain continued such a very long time. There is no evidence of symptoms that can be definitely associated with multiple sclerosis until April or May, 1947. But no physician *21 who saw him earlier than April 10th, testified, and no neurologist examined him until June. The first symptoms of the disease, such as numbness and tingling, may be so inconspicuous that they attract no one's attention.
Dr. Meisel, a general practitioner, examined appellant April 26, 1947, and treated him thereafter until March, 1948. On his first visit, he found that his patient's reflexes, especially his supra patella (knee-cap) reflexes, were exaggerated. He walked with a somewhat staggering gait, and his muscular movements were unsteady, for instance, when he was dressing himself after treatment. The staggering gait and unsteady muscular movements observed by Dr. Meisel, may be considered early manifestations of multiple sclerosis. On cross-examination, however, the doctor was uncertain whether he noticed the staggering gait when he first saw appellant or on a later occasion.
The first neurologist to examine appellant was Dr. Manfried Gorten, June 27, 1947. His diagnosis was multiple sclerosis. Three more examinations of appellant should be mentioned: By Dr. Gorten, December 11, 1947; Dr. Laurence M. Collins, clinical director of the State Hospital at Greystone Park, March 8, 1948; and by Dr. William Ehrlich, neurological surgeon, March 9, 1948. One other neurologist testified, Dr. Jack Blumberg, who had never seen appellant but who based his opinion on facts stated in a hypothetical question. The four men agree on a diagnosis of multiple sclerosis or some other lesion or degeneration in the central nervous system. It does not seem to matter from which particular type of degeneration appellant is suffering; one is no more apt, or no less apt, to be connected with the accident, than the other.
Dr. Collins emphasized that there was no suggestion of trouble with the central nervous system previous to the accident. "It all dated from the trauma." "He was never well after that." The trauma, in his opinion, was the precipitating or aggravating factor; it may have caused a concussion of the spinal cord, a rupture of the small spinal vessels. It might be months, said Dr. Collins, before there were manifestations *22 of the injury, and, unknown to himself, the man might have had minor symptoms. "Many years may elapse before the full disease blooms." But the doctor added that for trauma to intervene as a causative factor is rare. He knew of only two other such cases in his wide experience.
Dr. Gorten said that after a trauma sufficient to precipitate the multiple sclerosis, the first signs of the disease might not appear for half a year. He added his opinion that appellant had been suffering from multiple sclerosis at least some months before he examined him June 27, 1947; but not before the date of the accident, except in a dormant state.
Both Dr. Ehrlich and Dr. Blumberg were firmly of the opinion that the accident of December 6th did not cause, or activate, or aggravate, the disease which disables appellant; they considered the appearance and progress of the disease to be entirely independent of the accident. They believed that a trauma sufficient to have influenced the multiple sclerosis, whether the trauma be described as a concussion or tearing or bruising of the spinal cord, or a rupture of blood vessels in the cord, would have produced effects which were both immediate and plainly noticeable, such as paralysis or blindness. As Dr. Blumberg put it, "If you have a concussion of the spine, any doctor can recognize it." Because appellant did not exhibit obvious, immediate results of a spine injury, these two neurologists were convinced there was no injury to the spinal cord, and therefore no trauma that could have caused appellant's present disability. Again these two doctors held the opinion that if the trauma had activated the multiple sclerosis, there would have been definite manifestations of that disease within two or three months, that is, by February or March, and since there was no evidence of such symptoms until later, their conclusion was re-enforced that the multiple sclerosis was independent of the accident.
As we have already noticed, the Bureau found that the appellant had proved his thesis, while the County Court held to the contrary. We are not trying the case de novo but are reviewing the facts only in order to determine whether the action of the County Court should be affirmed or reversed. *23 We should not disturb that Court's finding of fact unless we are satisfied that the finding is a mistaken one. Vandenberg v. De Kuyper, 5 N.J. Super. 440 (1949).
We think the lower Court relied too much on a time schedule for the appearance of definite symptoms of multiple sclerosis. None of the neurologists seem to have considered it safe to draw so sharp a line as to say that symptoms should have arrived by March; that April was too late. Again, if any one of these neurologists had examined appellant during the late winter or early spring, symptoms of multiple sclerosis might have been observed that were probably not recognized by the orthopedist who was treating his back muscles. It seems to us also that the Court gave insufficient weight to a group of factors that are undisputed: For years before the accident, appellant was a well man; ever since the accident, he has been incapacitated and is growing steadily worse; there is no proof of an independent, intervening cause. As was said in Auten v. Johnston, 115 N.J.L. 71 (Sup. Ct. 1935), these circumstances "bespeak the relationship of cause and effect." See also Kolesnik v. Irvington Varnish, etc., Co., 120 N.J.L. 8, at 12 (Sup. Ct. 1938). It is possible indeed that the back injury and the appearance of a disease of the spinal cord a few months later were entirely independent of each other; but it is unlikely. On the whole, we are persuaded by the proofs that appellant's disability was caused by the accident.
The judgment is reversed.