JOHN GALLOWAY, PETITIONER-RESPONDENT, v. FORD MOTOR COMPANY, RESPONDENT-APPELLANT.

Argued September 18, 1950—Decided October 16, 1950.

*Mr. Verling C. Enteman* argued the cause for appellant (*Messrs. McCarter, English & Studer,* attorneys).

*Mr. John A. Laird* argued the cause for respondent (*Mr. David Roskein,* attorney).

The opinion of the court was delivered by

WACHENFELD, J. The respondent was employed by the Ford Motor Company and suffered an injury while lifting a two hundred pound steel beam on December 6, 1946.

He filed a petition for temporary disability and at a hearing in April, 1947, the Workmen's Compensation Bureau found he had been temporarily disabled from December 7, 1946, to April 13, 1947, inclusive, and awarded benefits for this period. That award has been paid and is not in dispute.

The Bureau also determined that the respondent had suffered a permanent disability of five per cent and benefits therefor were awarded, which likewise have been paid and are not in dispute.

A further claim for permanent and total disability was made and hearings were held thereon during February, March and April, 1948. A Determination of Facts and Rule for Judgment, dated June 15, 1948, decreed that the respondent had suffered temporary disability from December 6, 1946, to February 28, 1948, and also total permanent disability. An award of temporary and permanent disability benefits was accordingly made.

The course then followed a common pattern, where the County Court disagreed in its findings and conclusions with the Bureau, and on appeal the Appellate Division was confronted with the necessity of re-evaluating the testimony which had brought about the conflicting results below. The decision of the Appellate Division under these circumstances, if not decisive here, is at least most persuasive.

The Bergen County Court determined the respondent had failed to establish that his present disability was caused by or was due to an aggravation resulting from the injury sustained by him on December 6, 1946, and his petition was accordingly dismissed. The matter was brought on before the Appellate Division and argued orally there on February 6, 1950. The judgment below was reversed, of which more later.

The appellant thereupon petitioned this court for certifi-

cation on the ground that the Superior Court, Appellate Division, in using the photostatic copy of the hospital record had so far departed from the accepted and legal course of judicial proceedings as to call for an exercise of this court's supervision. Certification was granted and in due course the case was presented and argued.

Three reasons are submitted for reversal. First it is alleged there was a failure to prove by the preponderance of evidence that the accident could have caused or did cause the present disability by precipitating or aggravating a pre-existing condition, and it is alleged there was likewise a failure properly to prove that the respondent was afflicted with multiple sclerosis prior to the date of the accident or suffering from it at the time of the hearing.

The physical condition complained of was multiple sclerosis, a degeneration of the nervous system. The medical testimony was not wholly in accord as to how long after an injury the symptoms of multiple sclerosis might appear. For several months no neurological examination of the respondent was ordered since his condition was, in the opinion of the doctor who was then treating him, an orthopedic dislocation not involving the nervous system. It was not until June of 1947 that the respondent had a neurological examination which revealed the condition of multiple sclerosis.

Some of the doctors who testified gave it as their opinion that the neurological symptoms would have appeared very shortly after December 6th if the respondent's present condition is due to the injury sustained on that date. Others thought the symptoms might not appear for a period of several months. The Appellate Division, in reviewing this evidence, said:

"It is possible indeed that the back injury and the appearance of a disease of the spinal cord a few months later were entirely independent of each other; but it is unlikely. On the whole, we are persuaded by the proofs that appellant's disability was caused by the accident."

It accordingly reversed the judgment of the County Court.

██ While the evidence is conflicting, the medical experts not agreeing in many instances, the burden of proof from the record has been sustained. It points irresistibly to the conclusion that the accident was the cause of the disability. It is undisputed the respondent was healthy and vigorous before the accident and is now totally disabled and unable to work. This, in our opinion, according to the evidence, cannot be purely coincidental. It is reasonably inferable that the accident precipitated and accelerated the prior condition which produced the total incapacity. We find no error in the factual determinations made by the Appellate Division. See *Davis v. Lotz,* 126 *N. J. L.* 615 (*Sup. Ct.* 1941).

Secondly it is argued there was error in admitting and using the photostatic copy of the hospital record.

There is proof by way of a supplemental affidavit that at the beginning of the oral argument in the Appellate Division the attorney for the respondent stressed and called the court's attention to the hospital record of the respondent's confinement from December 6 to December 18, 1946, immediately following the accident.

This record had not been introduced in evidence either before the Bureau or the County Court. A photostatic copy of it was produced at the hearing before the Appellate Division and it is asserted that at the conclusion of the argument the court requested the document and it is argued it was considered by the court in reaching its conclusion. The respondent contends the record had been offered to the court for its inspection in determining whether or not it should be received in evidence and that whatever examination of it was made was necessary to permit the court to reach a determination in this respect.

██ The hospital record had never been properly proven nor had it been introduced in either tribunal below and we have no difficulty in concluding it was error to receive it, but the inquiry still remains as to whether or not it injuriously affected the substantial rights of the appellant or whether it in fact was harmless.

The hospital record, without objection, was used and referred to on a number of occasions throughout the trial. Twice the medical experts produced by the company employed and considered it. In one instance the use of the record was suggested by counsel for the appellant in the cross-examination of Dr. Dilger. Again, Dr. Blumberg, who also testified for the company, was asked as to whether or not there was a concussion of the spine. He said there was not but added: "I think that the best indication would be this man's hospital record." Following this, on cross-examination he was asked to look at the hospital record and his particular attention was called to the entry of December 9, 1946, in which it was stated there was an acute reflex neurological illness, which he was asked to define. He answered: "An acute neurological illness would mean illness arising from disturbance of the central nervous system." In none of these instances was any objection made to the use of the record.

*Rule* 1:2–20(b) directs that a new trial "shall not be granted for misdirection, the improper admission or exclusion of evidence, or for error as to matters of pleading or procedure, unless, after examination of the whole case, it appears that the error injuriously affected the substantial rights of a party."

■■ The preponderance of the evidence without the hospital record is sufficient to establish the employee's action and, considering the "whole case" as we are enjoined and the use made of the hospital record in the court below where the substance of it came into the record at the suggestion of the employer, we cannot say that its use by the Appellate Division "injuriously affected the substantial rights" of the appellant.

■■ Lastly it is urged there was error in foreclosing the appellant, on cross-examination of a medical expert, from inquiring as to whether or not there were other textbooks which he had read which contained statements with reference to trauma precipitating multiple sclerosis and in sustaining an objection to a question regarding what a certain author had said in his textbook about trauma and multiple sclerosis.

These questions we think were proper and should have been admitted, but again we find that the failure of the court to permit them did not injuriously affect the substantial rights of the appellant. The first question had already been answered when the witness said: "I don't think there is any good textbook of neurology which doesn't mention trauma as one of the precipitating or facilitating factors of multiple sclerosis." The maximum time that might elapse after trauma before symptoms of multiple sclerosis precipitated by it would first manifest themselves was covered by a number of other medical experts. Seven doctors in all had testified, four for the employee and three for the employer. The medical possibilities were canvassed and thoroughly explored by means of hypothetical questions and extensive cross-examinations. We are not persuaded, under these circumstances, that the exclusion of this single question would or did injuriously affect the appellant's rights in such a substantial manner as to require a reversal.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For reversal*—Justices CASE and OLIPHANT—2.