17 N.J. Super. 425 (1952)
86 A.2d 279
JAMES MONACO, PLAINTIFF-APPELLANT,
v.
ALBERT MAUND, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1951.
Decided January 15, 1952.
*428 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Wallace P. Berkowitz argued the cause for the appellant.
Mr. Isidor Kalisch argued the cause for the respondent.
The opinion of the court was delivered by BIGELOW, J.A.D.
This is a workmen's compensation matter growing from an accident that happened outside of the State of New Jersey and therefore the decision of the Division of Workmen's Compensation is brought here for review and not to a County Court for a new trial. Rainess v. Grant Finishing Co., 132 N.J.L. 422 (Sup. Ct. 1945), affirmed 133 N.J.L. 611 (E. & A. 1946).
The appellant sustained a concussion of the brain and a spinal injury February 26, 1947, and was immediately removed to a hospital where he remained until March 29, when he was taken to his home, but continued under the care of physicians. He has never fully recovered his health. The questions presented are: To what date did temporary disability continue? What medical expenses should be paid by the employer-respondent? What is the extent of permanent disability? The deputy director determined that temporary disability continued no longer than to June 2, 1947; that all medical expenses subsequent to November, 1948, were "unauthorized" and that respondent was not under any liability for them, and that permanent disability was 40 per cent of total.
Let us tabulate the medical treatment that appellant received after he was brought home from the hospital. He was first a patient of Dr. Nicola, whom he consulted every *429 two months or so from April 7, 1947, to September 28, 1948. Heat treatments were prescribed and these he received once a week from April 14 to June 2, 1947. Then came a gap in active treatment until the following spring, when hypodermic injections were recommended. At last Dr. Nicola told appellant that no further treatments would help him; that he must rely on time and rest.
In the fall of 1948, appellant turned to Dr. Cornell, on whom he called for examination or physiotherapy treatments nine times between November 29, 1948, and February 1, 1949.
In January and February, he did traffic duty as a special policeman for four or five weeks, "But I could not continue." "There were kindergarten children. * * * You have to watch them very closely. * * * I had to run from one corner to another, hold the children back, stopping cars, and then telling them to go ahead, and I just couldn't do that."
On February 22, 1949, appellant became a patient of Dr. Taft, who called into consultation Dr. Ehrlich, a neuro-surgeon, and they promptly put him to bed. On May 27, 1949, they performed an operation on his spine and found that "the root of the fifth lumbar was congested and edematous" and also that there was "some abnormal mobility at the lumbo sacral junction." To correct this condition, they used a graft of his leg bone to make a lumbo sacral fusion. Appellant was kept in a plaster cast until July 1, 1949, and in a castex body jacket for a while thereafter. Dr. Taft continued to see appellant every few months until the hearing in September, 1950. The doctor testified that improvement, although very slight, was observable until April, 1950, when "he reached a point where he improved no further."
Respondent's medical expert was of the opinion that the condition of the spine which brought about the operation in May, 1949, was not caused by the accident; but the deputy director found to the contrary and so do we. Respondent stresses that while the X-rays taken immediately after the accident showed a fracture of the fourth lumbar vertebra, they showed no injury to the particular vertebra *430 which was operated on, namely, the fifth lumbar, or to its junction with the sacrum  that is, with the part of the spine that is fused with the pelvis. Before the accident, appellant's back had not troubled him; he had been a truck driver, in good health. There is no evidence of a second back injury, one occurring after the accident of February 26, 1947, and before the operation of May 27, 1949. The causal relation may be inferred. Galloway v. Ford Motor Co., 7 N.J. Super. 18 (App. Div. 1950), affirmed 5 N.J. 396 (1950). Even if his condition was aggravated by ill-advised attempts to work in February, the original accident still remains the proximate cause of his disability. Selak v. Murray Rubber Co., 8 N.J. Misc. 838 (Sup. Ct. 1930), affirmed 108 N.J.L. 548 (E. & A. 1932).
Let us first consider the question of temporary disability. The statute provides that compensation shall be paid during the period of temporary disability, not exceeding 300 weeks. R.S. 34:15-12(a). And that the period runs "to the first working day that the employee is able to resume work and continue permanently thereat." But deduct "any days and fraction thereof the employee was able to work during this time." R.S. 34:15-38, as amended L. 1945, c. 74, § 13. This section first came into our statute in 1921, L. 1921, c. 230, § 3. In an early case in the common pleas, Judge Osborne had held that temporary disability continued until the workman had sufficiently recovered to return to work. Creagh v. Nitram Co., 35 N.J.L.J. 328; affirmed 84 N.J.L. 243 (Sup. Ct. 1913). Two years later, temporary disability was defined as "a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit. An apt illustration is a case where there has been a loss of both arms. The temporary disability to be considered in such an instance is the physical state of the patient until the stumps are healed and he is able to get about." Vishney v. Empire Steel, etc., Co., 87 N.J.L. 481 (Sup. Ct. 1915). Then came the 1921 enactment, now section 38, which is, however, not discussed or *431 given apparent effect in any reported case. The meaning of the section is not readily apparent. It cannot well apply to one who is permanently and wholly disabled, and who is never able to go back to work. In our opinion, the principal object of the section was to encourage an injured workman to return to work at an early date. If he makes the attempt too soon, and finds he cannot continue at work, he does not thereby forfeit his right to compensation for temporary disability, although the days he actually works must be deducted. Section 38 supplements the rule of Vishney v. Empire Steel, etc., Co. and does not supersede it. Generally, temporary disability continues "until the employee is able to resume work and continue permanently thereat" or until he "is as far restored as the permanent character of the injuries will permit," whichever happens first. Cf. Mt. Olive Coal Co. v. Industrial Commission, 129 N.E. 103 (Ill. 1920).
In the present case, there is no indication of malingering on appellant's part. Badly injured, he has been persistent in his search for a cure. Since he left the hospital the first time, he has had his ups and downs, now improvement for a while and now retrogression. In such case, the time when temporary disability ends should not be determined by hindsight alone; the current situation should not be ignored. Did it appear in 1947 that no further improvement in appellant's condition could be expected? If not in 1947, when did that fact appear? See Reynolds v. Passaic, etc., Commissioners, 130 N.J.L. 437 (Sup. Ct. 1943), affirmed 131 N.J.L. 327 (E. & A. 1944), where the court held that the disability should be "deemed to be temporary until after a course of treatment and observation it is discovered to be permanent, and that fact is duly established."
The deputy director held that temporary disability ended when the heat treatments were halted June 2, 1947. But Dr. Nicola, who prescribed those treatments, recommended the injections that were later given. The deputy quotes from appellant's testimony, "I saw Dr. Kessler shortly after I saw Dr. Nicola, because I wasn't improving any. *432 And I wanted to know  I was in pain, and I wanted to be relieved, so someone recommended Dr. Kessler. I went to see him and he told me the same thing as Dr. Nicola; and that there were no treatments for that kind of injury; that the only treatments for that is time and rest; and the only thing you can do is to stand awhile, sit awhile and lay down. He says to keep on doing these things, and as you gradually become stronger you will stay a little longer." It does not appear when this advice was given; seemingly not till after the injections had been tried in the spring of 1948. Other physicians later considered the case not hopeless. Not until after the operation of May, 1949, was it established that further improvement was improbable. Dr. Taft testified that appellant improved slowly for nearly a year after the operation. His view was perhaps colored by a natural hope that his patient's condition would become much better than it actually did. We find that temporary disability continued to October 1, 1949. There should be deducted 25 days for temporary employment as a traffic officer.
The statute directs the employer to furnish necessary medical and surgical treatment and hospital service; or pay the reasonable charges therefor. However, the employer is not liable for such treatment and services unless he is aware of the need, or has been asked by the employee to furnish the same, and the employer refuses or neglects so to do. R.S. 34:15-15. On May 25, 1948, appellant's counsel wrote respondent's insurance carrier that both Dr. Nicola and Dr. Swain (who was administering the hypodermic injections) felt that appellant needed additional treatment and inquired whether it would be authorized. The company had its physicians examine appellant, and then replied under date of July 12, 1948, "I regret to inform you that we cannot authorize any further medical treatment." Again, on March 2, 1949, appellant's attorney wrote the insurer, "Mr. Monaco has been ordered back into the hospital for additional treatment. I pass this information on to you because I feel that the cost of this additional treatment should be borne by you." *433 If the treatment obtained by appellant seemed reasonably necessary and if the charges were fair, the respondent is liable. Bobertz v. Hillside, 18 N.J. Misc. 399 (Comm. Pl. 1940), affirmed 125 N.J.L. 321 (Sup. Ct. 1940), affirmed 126 N.J.L. 416 (E. & A. 1941); Donofrio v. Haag Bros., 10 N.J. Super. 258 (App. Div. 1950).
We find that the examinations and treatment received by the appellant, including the operation, were reasonably necessary. Respondent does not challenge the amount of the several charges. They are allowed to the appellant accordingly.
In assessing the extent of permanent disability, the deputy director had the great advantage of hearing the appellant testify and observing him in the hearing room. The seriousness of his injuries cannot be doubted. Yet appellant is able to be up and about, and has been driving his automobile for two or three years. The director allowed compensation for 40 per cent of total disability and we concur.
The order under appeal is set aside so far as it fixes compensation for temporary disability and directs payment of medical expenses, and the record is remanded to the Division for modification in accordance with the findings contained in this opinion.