19 N.J. Super. 100 (1952)
88 A.2d 235
MARGARET TRUSKY, PETITIONER-RESPONDENT,
v.
FORD MOTOR COMPANY, LINCOLN-MERCURY DIVISION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 21, 1952.
Decided April 30, 1952.
*102 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. Verling. C. Enteman argued the cause for appellant (Messrs. McCarter, English & Studer, attorneys).
Mr. Aaron Gordon argued the cause for respondent (Messrs. Weiner & Weiner, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
One James Trusky died on January 14, 1949. His widow and sole dependent inaugurated the present proceeding by the presentation of a petition in which she alleged that on January 7, 1949, the decedent suffered an accident arising out of and in the course of his employment by the Ford Motor Company which produced an intra-cerebral hemorrhage causing the decedent's death. She has recovered an award of compensation under R.S. 34:15-7 et seq. The employer prosecutes this appeal.
There is no doubt that the burden descended upon the claimant to prove those essential and indispensable elements of her claim by a preponderance of the evidence. Parker v. John A. Roebling's Sons Co., 135 N.J.L. 440 (Sup. Ct. 1947), affirmed 136 N.J.L. 635 (E. & A. 1948). It is equally indubitable that an injury, even though fatal, suffered in the course of employment but arising solely from natural causes wholly unrelated to an industrial mishap, is not compensable. Becker v. City of Union City, 17 N.J. Super. 217 (App. Div. 1952).
The burden of proof necessarily embraces the obligation to disclose that the injury sustained by the employee was the consequential result of an accident within the import of the statute. The proof is not required to eliminate all doubt. Ames v. Sheffield Farms Company, 1 N.J. 11 (1948); *103 Russo v. Wright Aeronautical Corp., 1 N.J. 417 (1949). The burden may be fulfilled by the submission of proof which preponderates in favor of the tendered hypothesis by the erection of a rational inference founded upon a comparative superiority of probabilities according to the common experience of mankind. Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533 (Sup. Ct. 1939); Sunkimat v. Senger Coal & Ice Corp., 137 N.J.L. 103 (Sup. Ct. 1948).
The transcript of the evidence in the present case has been zealously examined and considered within the legitimate orbit of our inquiry. Both the deputy director and the judge of the Middlesex County Court concluded that the evidence adequately established that the decedent's death was proximately caused by an accident which occurred on January 7, 1949, and arose in the course of and out of the decedent's employment.
In our review of the evidence we do not ignore those inferences of fact which the deputy director and judge of the County Court could have logically and rationally drawn from it. It is not inexpedient to state that considerable weight is accorded in this court to the findings of fact of the County Court where such findings parallel those of the deputy director. Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258 (App. Div. 1950).
Notwithstanding the existence of concordant conclusions by the deputy director and the County Court, Rule 3:81-13 seems often to have induced the supposition that this court studies the evidence with a view toward making findings of fact of its own wholly insensible and inattentive to the previous factual findings. Cf. Rules 1:2-20 and 4:2-6. It must be realized that this court exercises in such proceedings an appellate or supervisory function which operates to ascertain whether the findings of the County Court are supported by sufficient evidence. The permissive power conferred by the rules is exercised in the sound discretion of this court only where from an examination of the record it is manifest that the findings of fact under review are so *104 plainly unjustified by the evidence that the interests of justice necessitate their nullification. Vide, Vandenberg v. John De Kuyper & Son, 5 N.J. Super. 440, 447 (App. Div. 1949); Morgan v. Letwenske, 6 N.J. Super. 67 (App. Div. 1949); Galloway v. Ford Motor Co., 7 N.J. Super. 18, 22 (App. Div. 1950), affirmed 5 N.J. 396 (1950); Kuperstein v. Gude & Cole Corp., 7 N.J. Super. 200 (App. Div. 1950); Donofrio v. Haag Brothers, Inc., supra; Giacchi v. Richmond Brothers Co., 11 N.J. Super. 76 (App. Div. 1951); Folsom v. Magna Manufacturing Co., 14 N.J. Super. 363 (App. Div. 1951); Lilly v. Todd, 15 N.J. Super. 1 (App. Div. 1951); Becker v. City of Union City, 17 N.J. Super. 217, 227 (App. Div. 1952).
There is no scientific measure on appeal for definitely ascertaining to what extent the conclusions of the triers of the facts correspond to the actualities where the witnesses have disagreed, the permissible inferences derivable from the evidence were divergent and contradictory, and where some of the evidence, deemed by the triers of the facts to have been true, rationally supports the conclusions. It has been remarked that an appellate court in reviewing the trial court's determination of the facts "has to operate in the partial vacuum of the printed record," and that "the best and most accurate record (of oral testimony) is like a dehydrated peach; it has neither the substance nor the flavor of the peach before it was dried."
The field of appellate inquiry becomes exceedingly narrow where the impressions of the trial judge upon which he erected his factual findings are entirely subjective. In such instances the trial judge exercises what Aquinas and other legal writers have denominated "fact discretion." The respect accorded by an appellate court to such factual decisions has occasioned Tourtoulon's expression "the sovereignty of the trial court."
It is not to be supposed, however, that an appeal from a judicial finding of fact is inherently and necessarily a futility. There may be cases in which the true factual situation, as *105 Professor Llewellyn expressed it, "breaks through in the record," or in which, figuratively stated, "windmills have been manifestly mistaken for giants." Then, moreover, there are some other appurtenances to the supervisory procedure. For example, the trial judge may find as a fact that Shadrach and Abednego met and conversed on a certain day, and although the appellate court may not have reason to impugn that factual determination, yet it may differ with the trial court concerning the legal significance of the meeting and anent the interpretation of the conversation. These comments are in general illustrative of the practical and legitimate sphere of the appellate review of findings of fact in proceedings of this nature.
It is mainly in the light and shade of all of the aforementioned reflective considerations that the subject matter of the present appeal has been examined. Counsel for the appellant with his characteristic candor conceded at the hearing of the arguments that there was competent evidence, if worthy of belief, to establish the occurrence on January 7, 1949, of an accident in which a metal clamp weighing 100 pounds swung, striking the right side of the decedent's head in the area of the temple while the decedent was in the pursuit of his regular employment. Death ensued on January 14, 1949.
The real pressure of the argument is applied to the state of the proofs relating to the causal relation, if any, between the alleged accident and the decedent's death and here again the predominant tone of the appellant's insistence is that the factual determinations pertaining to that essential element "are contrary to the greater weight of the credible evidence."
A third edition of the pertinent testimony of the physicians would require a needless expenditure of time and energy. It would only disclose the endeavor of the appellant to induce us to attempt from our consideration of the transcript to weigh the credibility and persuasiveness of the testimony of those witnesses respectively. The medical testimony clearly *106 exhibits a difference of opinion between two groups of competent physicians. Those who actually participated in the autopsy and were thus fortified by the information thereby obtained testified to the causal catenation between the employment, the accident, and the fatal injury.
In the present case we need not hesitate to state that in the existing posture of the evidence, we, like the deputy director and the judge of the County Court, would attribute the determinative weight to the testimony of Doctor Hobbs and Doctor Yaguda, the pathologists who personally observed the discoveries of the post mortem investigation.
Assuredly there was sufficient evidence to warrant the conclusion that the fatal injury eventuated as a rational consequence of the accident.
Affirmed.