31 N.J. Super. 489 (1954)
107 A.2d 61
FRANK CIERPIAL, PETITIONER-APPELLANT,
v.
FORD MOTOR COMPANY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 28, 1954.
Decided July 9, 1954.
*490 Before Judges EASTWOOD, FREUND and FRANCIS.
Mr. Arthur J. Sills argued the cause for the petitioner-appellant (Messrs. Wilentz, Goldman, Spitzer & Sills, attorneys).
Mr. Verling C. Enteman argued the cause for the respondent (Messrs. McCarter, English & Studer, attorneys; Mr. Stuart A. Young, Jr., of counsel).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
In this workmen's compensation case, we are in concurrence with the dismissal by the Division *491 of Workmen's Compensation of the petition at the conclusion of the claimant's proofs and the affirmance by the County Court.
The record discloses that the appellant suffered injuries at his place of employment on April 30, 1952. A fellow employee, Jack Keen, a comparatively new employee, who worked alongside the appellant, became engaged in a personal argument with another employee named Felix Darden, wherein Darden and Keen made offensive personal remarks against each other. Thereupon, the appellant called to Darden, telling him to let Keen alone as he was behind in his work. At that time, Darden and the appellant became engaged in making offensive personal remarks towards each other, eventuating in their shoving each other until Darden fell backwards. The appellant then returned to his work and approximately two to five minutes after the argument ended, Darden, without warning, struck petitioner from the rear on the back of appellant's head with a 12-pound piston. At the hearing before the Division, Keen testified that "me and the rebel (meaning Darden) was talking back and forth there. Frank told the rebel to leave me alone because I had so much work to put out that day." Cierpial testified that "I told him (Darden) to leave him alone", and "Then Felix came over and told Jack that he was going to give me the `needles,' instead of using the word, `heckling.' * * * So, we started talking back and forth, fooling. I told him to go on his job because he was away from the convertible line where we make up the tops. So then he put my wife into the conversation and he put my mother into the argument. Then he shoved me. I shoved him back. After that, it was broken up. * * * After everything was broken up, two minutes later, he hit me in the back of the head with a 12-pound convertible piston. It is like steel with three nuts."
On cross-examination, Cierpial first testified that he was authorized by the foreman to supervise Keen, but retracted that statement and said "No, to tell them." What he was "to tell them" is not disclosed.
*492 We are in accord with the appellant's assertion in his brief that the question before the County Court "was whether or not, resolving all inferences in petitioner's favor, petitioner had made out a prima facie case, that is also the question before this court."
Primarily, the burden is, of course, upon the claimant to prove those essential and indispensable elements of his claim by a preponderance of the evidence and, although the proof does not require the elimination of all doubt, such burden embraces the necessary obligation to establish that the injury "was the consequential result of an accident within the import of the statute." Trusky v. Ford Motor Co., 19 N.J. Super. 100 (App. Div. 1952); Reynolds v. Public Service Coordinated Transport, 21 N.J. Super. 528 (App. Div. 1952).
Upon a motion for dismissal, submitted at the conclusion of petitioner's case, the evidence together with all reasonable inferences deducible therefrom must be resolved in petitioner's favor. This rule is so strongly entrenched in our juridical law that it needs no citations to support it.
Other established rules to be considered here are that every intendment is in favor of the judgment under review; that to raise a doubt is not sufficient to lead to a reversal and an appellate court should not disturb the County Court's findings unless it is well satisfied that they are mistaken. 5 C.J.S., Appeal and Error, § 1533; McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276 (App. Div. 1950); Vandenberg v. John De Kuyper & Son, 5 N.J. Super. 440 (App. Div. 1949); Galloway v. Ford Motor Co., 7 N.J. Super. 18 (App. Div. 1950), affirmed 5 N.J. 396 (1950); Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258 (App. Div. 1950).
Appellant concedes that: "If the only connection between the employment and the assault is that the assault occurred at the place of employment, the employment is not regarded as such a contributing cause and the accident is said not to arise out of the employment."
*493 Our review of the record satisfies us that the incident which eventuated in the appellant's injuries was solely personal and entirely unrelated to any duty or task of the employee or incidental thereto in the performance of his work. The origin of the incident was a conversation between two fellow employees which did not concern the appellant personally and certainly had nothing to do with the appellant's performance of his work. Cierpial clearly injected himself into the conversation between Darden and Keen and thereafter the offensive epithets were directed by each of them against the other, leading to the shoving incident and Cierpial's injury when Darden struck him with the piston. Clearly, this blow must be considered as a part of the entire incident between Cierpial and Darden and did not originate from nor was it caused by any incident of Cierpial's employment.
The appellant emphasizes the fact that Keen testified, in substance, that he worked alongside of Cierpial; that Keen's job was to make up certain stock and hand it to Cierpial when he required it and that Cierpial's testimony justifies the inference that he was authorized to direct Keen in his work, and that the legitimate inference that flows therefrom supports his contention that the injury arose out of an incident of the employment and was, therefore, compensable under the statute.
In the light of appellant's proofs, we are convinced that he did not bear the burden cast upon him of making out a prima facie case that his injuries were sustained as the result of an accident arising out of and in the course of his employment. At the risk of being repetitive, the proofs establish that Cierpial injected himself into the vituperative discussion between Darden and Keen. Thereafter, the offensive epithets and conversation were between Darden and Cierpial and the misfortune which subsequently befell Cierpial resulted not from any attempt to protect Keen, but rather as the tempers of the two men became inflamed as they exchanged scurrilous and defamatory remarks.
*494 This case comes clearly within the rule that an employer is not liable under the Workmen's Compensation Act to make compensation for injury to an employee which is the result of horseplay or skylarking or a personal feud. "In the case at bar the employer was not charged with the duty to see to it that none of his employes assaulted any other one of them, either willfully or sportively. And when one made such an assault upon another he was guilty of the doing of a negligent act as an individual tort-feasor, for which his employer was not responsible." Hulley v. Moosbrugger, 88 N.J.L. 161, 168 (E. & A. 1915); Cf. Mountain Ice Co. v. McNeil, 91 N.J.L. 528 (E. & A. 1918); Budrevie v. Wright Aeronautical Corp., 135 N.J.L. 46 (Sup. Ct. 1946), affirmed 136 N.J.L. 198 (E. & A. 1947); Savage v. Otis Elevator Co., 136 N.J.L. 419 (Sup. Ct. 1948).
The judgment of the County Court is affirmed.
FRANCIS, J.A.D. (dissenting).
Keen was a new employee and inferentially inexperienced in the task that was assigned to him. His particular operation was integrated with the work of appellant and of another employee. While the record is not as clear as it might be, Keen's operation was to make up certain "stock." Cierpial, who was only a foot or a foot and a half away, and the other employee would say to him: "I need two or three green bottoms" or "one white bottom" and he would make them up. As Keen put it: "Frank (Cierpial) he told me what I should do, like what different colored stock should be used. * * * Frank tells me what stock to make up."
At the time of the assault Keen was "sitting alongside of" Cierpial making stock and he was behind in the work. A fair inference therefrom is that as a result Cierpial was likewise behind. The other employee, Darden, began to heckle Keen, the subject being unrelated to the employment. Cierpial told Darden "to leave the fellow alone because he is behind in his work." Keen's testimony on this score was that Cierpial told Darden "to leave me (Keen) alone because I had so much work to put out that day."
*495 As a consequence of this interference, a vitriolic argument arose between the two men which eventuated in Darden's shoving Cierpial, who retaliated by causing the assailant to fall back on a table. Then the fracas was broken up. Two minutes later and after Cierpial had resumed work, Darden struck him on the head with a piston.
When Cierpial was cross-examined as to why he interposed between Darden and Keen, he first asserted that the foreman had given him orders to supervise and then said: "No, to tell them."
As the majority opinion indicates, the testimony and all the inferences therefrom should be taken most favorably to the workman on a motion to dismiss at the close of the proof in support of his petition.
Making allowances for lack of facility of expression, which I think we should do in these cases, it seems a fair inference from Cierpial's testimony that he, who worked so closely with Keen, had been instructed to tell other employees not to interfere with Keen's work because he was behind. If this be the fact, then appellant was merely following instructions when his intervention took place.
Aside from this, the integrated character of the work, the apparent mutual dependence of appellant and Keen on each other for the processing of the employer's product, and the fair deduction that if Keen was behind in his production so was Cierpial, in my judgment sufficiently relate the intervention by Cierpial to his occupational pursuits to make out a prima facie case that the assault arose out of the employment.
On this record it may be inferred reasonably that the quarrel which arose between appellant and Darden was stimulated by Cierpial's interest in the employer's production and by his realization that interruption of Keen meant delay and inability to pursue the task which had been delegated to him by the employer.
We are not dealing with a case where two separate tribunals have reached the some conclusion in a factual dispute. Here *496 the question is one of law. Do the facts and all the favorable inferences therefrom, which had to be taken as admitted at the stage of the case when the motion was made, make out a prima facie case of an employment connected assault? It seems to me that an affirmative answer must be given and that production of the employer's defense is called for.
Accordingly the judgment should be reversed.