40 N.J. Super. 484 (1956)
123 A.2d 555
GEORGE REYNOLDS, PLAINTIFF-RESPONDENT,
v.
GENERAL MOTORS CORPORATION (HYATT BEARINGS DIVISION), RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1956.
Decided June 14, 1956.
*485 Before Judges FREUND, CONFORD and SCHETTINO.
Mr. Carl S. Kuebler argued the cause for the respondent-appellant (Messrs. Carpenter, Bennett, Beggans & Morrissey, attorneys).
Mr. Herman M. Wilson argued the cause for the plaintiff-respondent (Mr. David B. Geltzeiler, attorney).
The opinion of the court was delivered by FREUND, S.J.A.D.
On September 13, 1951 a chest X-ray of the petitioner George Reynolds, taken by the Medical Department of his employer, the respondent General *486 Motors Corporation, revealed advanced pulmonary tuberculosis. As a result the petitioner, claiming that he had contracted the disease in the course of his employment for the respondent, sought workmen's compensation. He prevailed in the Division of Workmen's Compensation and in the County Court, although each award was premised upon a different theory of causation. The respondent appeals, asserting that both tribunals were mistaken.
The petitioner began his employment with the respondent in 1942. Pursuant to the respondent's regular medical program for its employees, three X-rays of the petitioner's chest had been taken between 1942 and 1947, all of which were negative as to the presence of tuberculosis.
The petitioner worked for the respondent as an "internal grinder," intermittently from August 1942 to November 1946, and continuously thereafter. His work consisted of grinding steel bearings or races, held in a machine of which the rapidly revolving grinding stone was composed of metallic oxides held together with a vitrified ceramic bond and was cooled by a solution which continually poured over the wheel, causing spray. Normally such grinding operation used up between six and fifteen grinding stones each day. During the grinding operation the operator's face was within 18 inches of the grinding stone which, revolving at high speed, threw off dust which, mixed with the spray from the cooling solution, not only settled upon the petitioner's clothes and body but was inhaled by him, causing him to blow his nose frequently, sneeze, cough and expectorate, and made his throat raspy. Admittedly, some face masks were provided, but their use was not required and the petitioner did not wear one.
Dust counts made as late as April 1951 revealed that the dust concentration in the room where the petitioner worked was within the permissible limits for that type of dust as specified by the New Jersey Department of Health.
The petitioner testified that during the spring of 1951 his cough became worse, particularly when he was at work, and that he began to feel tired, lost weight, was short of *487 breath, did not sleep properly and occasionally had night sweats. On September 6, 1951 he had chills and fever while at work. He went to the plant hospital where the nurse diagnosed his ailment as a touch of the grippe and told him to go home. That evening he was treated by his family physician. He remained at home until September 13 when he returned to work. There he was examined by the plant physician, who had X-rays taken of his chest which disclosed that he had pulmonary tuberculosis. Upon the direction of his family doctor, he was hospitalized on September 20. In December a thoracoplasty was performed upon him, seven ribs on his right side were removed and his right lung collapsed. He remained in the hospital until October 14, 1953.
It is undisputed that two of the petitioner's fellow-employees also developed tuberculosis, one discovered in October 1951, the other in April 1952. The petitioner's claim for compensation was based upon alternative theories of causation:  either contraction of the disease through contact with fellow-employees, or contraction through "lighting-up" of a latent tubercular condition by reason of irritation caused by the inhalation of dust on the job. The Deputy Director granted an award on the former theory; the County Court on the latter.
The medical proofs are in sharp conflict. Dr. Lieb, the petitioner's expert, concluded that a causal relation existed between the petitioner's disease and his work. He predicated this conclusion upon finding a "preexisting latent tuberculosis focus" in the petitioner's lungs, which he stated was activated by the inhalation of dust over a period of several years in the course of his employment. He testified that at first there was irritation of the bronchial tubes, that the petitioner "developed a chemical or irritative bronchitis from the inhalation of dust," which persisted and increased in intensity, finally resulting in the reactivation of the preexisting latent or quiescent tuberculosis.
The respondent's experts agreed that the X-rays of the petitioner taken before 1951 all indicated a previous tubercular *488 infection, not active at the time  a well-healed lesion. Dr. Willner stated that tuberculosis could only be caused by tubercle bacillus, although he admitted that clinically it has been found that silicosis could activate dormant tuberculosis. However, he testified that the dust which the petitioner inhaled was harmless and did not cause any pulmonary irritation. This finding was, he testified, supported by an admitted absence of fibrotic changes in the petitioner's lungs.
The respondent's other medical expert, Dr. Irving Applebaum, stressed the absence of causal relation between the petitioner's work and the tuberculosis. He corroborated most of the testimony of Dr. Willner. However, significantly, he agreed with the petitioner's expert that it was possible for a dormant tuberculosis condition to be reactivated without contact, but that in such event fibrotic changes would occur. He opined that it was most probable that the petitioner contracted the disease by contact with some other person. However he would not say that the petitioner probably contracted it from one of his fellow-employees, because he could not without proof assume that either one or both of them had contracted the disease before the petitioner.
It is necessary that the petitioner show by the greater weight of the probabilities that his disabling disease was due to causes and conditions arising out of and in the course of his employment. Mergel v. New Jersey Conveyors Corp., 14 N.J. 609 (1954). The standard is probability, not certainty; conclusive proof can seldom be offered and is not required. Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533 (Sup. Ct. 1939). The petitioner's proofs "may be direct, circumstantial or presumptive." Green v. Simpson & Brown Construction Co., 14 N.J. 66 (1953).
It is settled that an employer takes his employees with all their mental, emotional, glandular and other physical defects or disabilities. Marshall v. C.F. Mueller Co., 135 N.J.L. 75 (Sup. Ct. 1946). Vide Bernstein Furniture Co. v. Kelly, 114 N.J.L. 500 (Sup. Ct. 1935) and Molnar v. American Smelting & Refining Co., 128 N.J.L. 11 (E. & A. 1942).
*489 Prior to the enactment of R.S. 34:15-31 which permits compensation for disability resultant from occupational disease, this petitioner could not have recovered an award of workmen's compensation. Cf. Dailey v. Mutual Chemical Co. of America, 125 N.J.L. 465 (Sup. Ct. 1940); 1 Larson's Workmen's Compensation Law, § 40.00 et seq. Today, the statute provides that:
"* * * `compensable occupational disease' shall include all diseases arising out of and in the course of employment, which are due to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or employment, or which diseases are due to the exposure of any employee to a cause thereof arising out of and in the course of his employment."
In the application of the statute our courts have held that the occupational disease statute affords recovery to workmen whose preexisting disposition to a disease is aggravated or precipitated by his employment, even if the original condition was non-occupational in cause. The employer "is responsible for the end result." Giambattista v. Thomas A. Edison, Inc., 32 N.J. Super. 103 (App. Div. 1954). Tuberculosis may be an occupational disease, and if so it is compensable if proofs of causal relation between employment and the disease are sufficient.
This appeal is from the award made by the County Court. Determinative, but not conclusive, weight is to be given to the findings of fact made by that court, and they are not to be disturbed unless we are well satisfied that they are mistaken and not justified by the evidence. Temple v. Storch Trucking Co., 3 N.J. 42 (1949); Vandenberg v. John De Kuyper & Sons, 5 N.J. Super. 440 (App. Div. 1949); Galloway v. Ford Motor Co., 7 N.J. Super. 18 (App. Div. 1950). Only in such case will this court exercise its permissive power to make independent findings of fact. Trusky v. Ford Motor Co., 19 N.J. Super. 100 (App. Div. 1952). Hence, our initial inquiry is to determine whether the evidence supports the findings of fact.
The petitioner's medical expert based his finding of causation on the theory that the constant irritation to the petitioner's *490 lungs by the inhalation of dust activated his preexisting quiescent tuberculosis. The respondent's medical experts are for the most part in conflict with this conclusion. They contend that there could be no tubercular infection caused by dust without some signs of fibrotic changes in the petitioner's lungs. While it is admitted by all the medical experts that no fibrotic changes occurred, in Dr. Lieb's opinion a dormant tubercular infection could be aggravated and reactivated by the inhalation of dust without any fibrotic changes.
In the Tutt case, supra, the petitioner claimed he had contracted tuberculosis as the result of inhaling sulphuric acid fumes while at work. As here, no fibrosis was revealed by X-rays. There, as here, the petitioner, in good health prior to his employment, contended that inhalation of an irritant had "lighted-up" a dormant tubercular condition. This court reversed the County Court, made independent findings of fact and reinstated the award granted by the Division of Workmen's Compensation. Vide, Kovaliski v. Collins Co., 102 Conn. 6, 128 A. 288 (Sup. Ct. Err. 1925); McGoey v. Turin Garage & Supply Co., 195 App. Div. 436, 186 N.Y.S. 697 (App. Div. 1921); Tintic Milling Co. v. Industrial Comm., 60 Utah 14, 206 P. 278, 23 A.L.R. 325 (Sup. Ct. 1922); Annotations, 20 A.L.R. 75, 73 A.L.R. 547.
Here, there is sufficient evidence to support the finding of condensability made by the County Court. Therefore, we find no necessity to exercise our power to make independent findings of fact. The judgment of the County Court is affirmed.
In view of our disposition of the case, it is not necessary that we determine the question of whether a disease contracted from a fellow-employee is compensable under our statute.