**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5001-17T3

NANCY DANIELS,

     Plaintiff-Appellant,

v.

THOMAS DANIELS,

     Defendant-Respondent.

_____

          Submitted September 10, 2019 - Decided August 28, 2020

          Before Judges Accurso and Gilson.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0886-07.

          Eric J. Warner, attorney for appellant.

          Heymann & Fletcher, attorneys for respondent (Alix Claps, on the brief).

PER CURIAM

     Plaintiff Nancy Daniels and defendant Thomas Daniels were divorced in

2007 after a sixteen-year marriage and two children. Although they amicably

resolved their divorce, entering into a forty-page marital settlement agreement (MSA), a separate custody and parenting time arrangement, and a supplemental agreement several months after the divorce, clarifying that defendant would be one hundred percent responsible for the children's college expenses, after exhaustion of any trust funds, custodial accounts, scholarships, grants, and the like, both parties agreeing the children should not be required to obtain loans, their post judgment relations have been acrimonious, resulting in at least thirteen substantive orders, predating those on appeal, arising out of repeated disputes over compliance with the financial terms of the MSA.

In 2017, defendant filed a motion to emancipate the parties' younger child and obtain reimbursement for child support he claimed he overpaid after their older child was emancipated. Plaintiff opposed that motion and filed her own motion in aid of litigant's rights, seeking to compel defendant "to pay all amounts previously ordered by the court" and "the numerous amounts that he has contracted to pay or is otherwise obligated to pay," and compelling defendant to provide the necessary authorizations "required to obtain any and all financial records over the last ten years for any and all financial accounts and/or services" he has held or utilized, along with over fifteen other specific requests for relief. The court granted defendant's emancipation motion and

2

ordered a plenary hearing to resolve the issue of child support and to "determine a final schedule of the amounts due and owing between the parties."

Judge Michael J. Rogers presided over a seven-day plenary hearing at which only the parties testified. Referencing the many post-judgment motions the parties had filed, Judge Rogers declared his "desire and hope to put an end to this constant litigious acrimony once and for all and to make as complete a record as is necessary and possible." To that end, the judge delivered a comprehensive decision from the bench, consuming nearly fifty pages of transcript, recapping the history of the parties' marriage and divorce, and the many post-judgment motions and orders affecting the current dispute. The judge expressed his view of the credibility of the parties and their positions, and carefully addressed the issues presented, making clear findings and explaining his resolution of each issue.

As for the history of their marriage, the judge noted that defendant had been a hedge fund manager until the Securities and Exchange Commission sued him and his fund for fraud, and he agreed to pay $1,553,945 in civil penalties and disgorgement and accepted a permanent bar from association with any investment advisor in 2004. The parties immediately teamed up with

3

one of defendant's partners in the hedge fund and his wife to form a limited liability company, Woodstone Custom Contractors, to develop residential real estate. Woodstone would not turn a profit for several years, although it weathered both the parties' divorce in 2007 and the recession. The judge noted that defendant certified in 2006, that the parties had $400,000 in unearned income in 2005, a joint marital lifestyle of $44,836 per month, and a net worth of nearly $6,000,000.

The judge described the positions of the parties in the plenary hearing as existing "at a four-way intersection of financial inaccuracy, issue confusion, misstatements of so-called facts, and often unreasonable interpretations of various documents and orders." Plaintiff claimed that defendant owed her $941,857.55. Defendant claimed that plaintiff owed him $218,487.12. At the conclusion of the hearing, Judge Rogers found defendant owed plaintiff $305,634.87 and was due credits of $242,296.74, leaving a net amount due from defendant to plaintiff of $63,338.11.

The judge described the "backdrop of this entire case . . . is generally the unwillingness and/or inability of the defendant to comply with his obligations under the marital settlement agreement and subsequent agreements and court orders." Reviewing the post-judgment history, including "the many orders and

judicial findings," the judge noted "defendant was typically the offending party," was "often in clear violation of litigant's rights" and "filed motions that were without merit." Regarding the testimony of the parties at the hearing, the judge found defendant, "at times appeared savvy and knowledgeable, but was often untrustworthy in his testimony, positions and conclusions." As for plaintiff, the judge found, she "seemed credible at times but was frequently ill-informed and offered bare, unsupported conclusions and opinions."

The judge criticized both parties for their failure to marshal evidence, noting that both promised to call fact witnesses, particularly an attorney who had represented both parties and had extensive knowledge of the amounts owed and how credits were supposed to flow and the accountant who served as both a mediator and arbitrator for the parties on several occasions and "was intimately familiar with the complex set of facts at issue," but did not do so. Judge Rogers also noted the parties' failure to produce several post-judgment orders "that were relevant and material" and their failure to even realize until after the parties had testified that "[a] critically important document that both sides interpret differently," but urged the court to rely on, an unsigned, undated consent order following economic mediation in 2008, was missing a page that contained important information.

A-5001-17T3

The judge found that in their testimony, "the parties rarely confronted the financial issues in their case head on. Rather, they selectively set forth their respective positions with blinders on to the arguments of the other." The judge found the parties' acted as "if the other side didn't exist, so certain and righteous they each were in their opinions." He found "[t]hey each described a convoluted set and series of arguments, events, expenses, payments, motions, orders, alleged agreements and more arguments." Judge Rogers concluded:

> The point is that the litigation tactics of the parties throughout the tumultuous litigation history between them caused them to reveal only what they wished to see. A genuine search for truth is irrelevant to these litigants insofar as it concerns themselves. They want what they want and will generally say whatever it takes to achieve their respective goals.

Hampered by the failure of the parties to produce all relevant evidence at the plenary hearing, the judge noted he could, under the Court Rules, "opt to deny all requests for relief and impose sanctions, but to what end? The parties would just return for more rounds of motions and little would be accomplished." The court accordingly determined to decide the issues presented for resolution on the evidence adduced at the hearing, holding "each party accountable for their evidentiary deficiencies" in accordance with the burdens of proof on each issue.

6

The issue at the heart of the parties' dispute arose out of defendant's obligation undertaken in the MSA to pay plaintiff $500,000 in lieu of alimony, fifty percent of which was to be paid from defendant's share of the net proceeds of sale of the marital home, with the remaining fifty percent from his share of the sale of the Woodstone properties. The MSA called for simple interest of 5.72% on the daily outstanding balance, payable monthly, to begin to accrue on July 1, 2007. The 2008 consent order changed the interest on past due payments to ten percent.

The parties agreed that another judge found in March 2011 that the outstanding principal balance on defendant's obligation was then $230,788.50, although neither party presented any evidence establishing what payments were made and when in order to arrive at that figure. They also agreed that $143,288.50 remained owing as of March 24, 2011, when defendant tendered his $87,500 share from the sale proceeds of one of the Woodstone properties to plaintiff, and that was the sum to which credits and debits were applied. Although the parties agreed as to the principal owing as of that date, they disputed the interest due, largely because of the timing and extent of credits defendant claimed he was due against that principal balance.

7

Judge Rogers noted that in order to "properly analyze the [interest] issue one must be certain of what amount was due, when it was due, what interest rate applies, and for what time period." The judge found "[t]he parties provided very little useful testimony" to assist in clarifying the issue, "other than their own extreme interpretations of the MSA, the consent order, and the various orders entered by the court over the years." Plaintiff sought ten percent interest on every sum she claimed was due and had been due over the years, while defendant claimed he reduced the outstanding balance to zero when he gave plaintiff the entire benefit of his retirement assets in 2014, instead of just her coverture fraction. The court found the lack of detailed forensic accounting prevented it from accurately determining when amounts were due, how much was due, how much defendant had paid off, and how much interest had accrued.

Turning first to the credits defendant claimed he was owed, the judge agreed with defendant that he established his entitlement to credits of $52,400 from sale of another of the Woodstone properties; $34,497.82 from Woodstone credit card charges attributable to plaintiff; $37,737 from Woodstone credit card interest attributable to plaintiff; and $113,392.92 for transferring the entire benefit of his Citibank pension to plaintiff.

8

The judge disagreed that defendant was entitled to a credit of $25,682 for transferring the entirety of his $51,424 Merrill Lynch retirement account to plaintiff rather than her share of the marital coverture portion. The court noted that defendant's retirement accounts were to be divided via qualified domestic relations orders, which were submitted in 2008, but returned by the administrator of the plans as insufficient. Although numerous orders were entered directing defendant to resubmit revised orders, defendant delayed resubmitting the order for the Merrill Lynch account until the end of 2014.

Defendant admitted he withdrew monies from the account before transferring them to plaintiff, but claimed he only invaded the non-marital portion and that he did so in order to fund expenses of the children. Judge Rogers found it was "clear" from the account statements in evidence

> that defendant treated these funds as his own and self-dealt with them over a period of several years. A fair inference is that the reason he delayed in cooperating with the 401K QDRO paperwork, despite several court orders to sign them, was because he was using a significant portion of the money for himself. His own "accounting" admits that he withdrew $121,351 from this account. We do not know what he used this money for. This was a comingled marital retirement asset and defendant had no right to deal with the funds as if he were the sole owner.

A-5001-17T3

The judge noted that defendant did not provide a "forensic accounting or competent evidence as to what the value of plaintiff's share would have been if he had complied with his obligations under the marital settlement agreement and subsequent court orders." The judge denied defendant any credit on account of the Merrill Lynch retirement account because "[h]is misconduct in handling these funds and intentionally denying plaintiff her right" to her share "makes it completely inequitable to honor his request for a credit against his alimony obligation."

As to the parties' dispute over child support, the judge noted plaintiff claimed she was owed $1,684.96 in overdue payments and defendant claimed he was entitled to a credit in the amount of $20,008.18 for prior overpayments. Following a lengthy discussion of the evidence adduced on the issue, Judge Rogers found neither party could prove their claim, and, instead, determined to rely on a Probation Division determination from December 2017, establishing defendant had overpaid child support in the amount of $4269. Adding the $4269 child support credit to the credits defendant established, the court found total credits to defendant of $242,296.74.

Having established the credits due defendant against his payment in lieu of alimony, the court returned to the question of interest. Plaintiff, relying on

10

the 2008 consent order that changed the interest on past due payments to ten percent, claimed defendant owed her $340,498.24 in interest, which she calculated by running interest at ten percent on $500,000 from July 1, 2007 until March 2011, when the outstanding principal balance was determined to be $230,788.50. To that sum of $170,000, she added sixteen days' interest of ten percent on $230,788.50, or $1,055.50, until defendant reduced the outstanding sum owed to $143,288.50 following his $87,500 payment from his share of the proceeds of sale of one of the Woodstone properties. Finally, plaintiff added another $100,301.94, which she calculated to be the ten percent interest on the $143,288.50 balance through the plenary hearing. Defendant claimed he only owed plaintiff $3846.48, representing two months of interest at ten percent.

Judge Rogers noted plaintiff's calculation was obviously incorrect. Interest according to the MSA was only due on past due amounts, and only at 5.72%. Although the 2008 consent order increased the interest rate to ten percent, it also noted that all accrued interest had been paid as of September 30, 2008. Thus, plaintiff's calculation of ten percent interest on $500,000 from the date of divorce, which also failed to account for the payments defendant made to reduce the sum due to $230,788.50 in March 2011, was an overreach.

11

The judge found the lack of any forensic accounting detailing when defendant made payments and when the credits he found defendant entitled to should have been applied made it "impossible to calculate interest with any reasonable degree of certainty."

The judge concluded, however, that plaintiff was clearly "entitled to some relief in the form of interest on her alimony arrears," even if the court could not calculate the sum due from the evidence in the record. Emphasizing that it was "a court of equity . . . at liberty to decide issues based on equitable considerations . . . present in the facts," the judge determined to provide plaintiff "an equitable, moderate and reasonable interest award that takes into account each side's position and all the factual circumstances . . . in this very complicated case to decipher." Accordingly, the court awarded plaintiff $35,000 in interest for amounts that should have been paid earlier and for opportunities she lost by not having the funds available for her use.

The court also found that plaintiff established several claims for sums defendant was previously ordered to pay that remained unpaid as of the hearing as well as some items for which she was owed reimbursement. The judge rejected defendant's claim that the $51,543.75 defendant was ordered to pay on account of tuition advanced by plaintiff in 2013, encompassed the

$48,739.15 he was ordered to pay for his share of the children's expenses in 2011, determining there was "no question" after reviewing plaintiff's certifications in support of both motions that "these two sums [were] for completely different sets of expenses incurred at different times for different reasons."

The judge found plaintiff failed to carry her burden to establish her entitlement to reimbursement for $40,948 in additional tuition payments, finding plaintiff provided sufficient documentation to establish only two payments of $10,579.40 and $5807 for which defendant should have been responsible. The judge also determined that an order awarding plaintiff fees on a prior motion for $10,750 remained outstanding, as well as $5735.07 for defendant's portion of certain car expenses for their older child. The judge determined plaintiff proved defendant owed her $305,634.87. Subtracting credits to defendant of $242,296.74, left a net award to plaintiff of $63,338.11.

The judge denied both parties request for counsel fees. He found he was not provided much information about the ability of either party to pay counsel fees, and that neither party proved entitlement to fees under the Court Rules or applicable case law. Although the judge harkened back to points already made about the credibility of the parties and the unreasonableness of certain

positions each took, he acknowledged the vast amount of confusion surrounding most of the issues, and determined he could not find that either party proceeded in bad faith on the issues presented at the plenary hearing.

Both parties appeal. Plaintiff contends the trial court erred: (1) in failing to calculate interest owed on alimony and instead awarding her an equitable sum of $35,000; (2) in failing to exercise its equitable powers to award her "a reasonable sum" to account for defendant's self-dealing and mismanagement of the Merrill Lynch retirement account; (3) in failing to cause defendant to assume full responsibility for the children's student loan debts; (4) in not reimbursing her for college expenses for their children; (5) in failing to award her $35,000 from the sale of one of the Woodstone properties; and (6) in failing to grant her attorney's fees. Defendant contends the trial court erred: (1) in failing to make findings of fact and conclusions of law regarding his overpayment of child support; (2) in failing to credit him with the value of the Merrill Lynch retirement account transferred to plaintiff beyond plaintiff's marital coverture portion; and (3) in treating the 2013 order directing him to pay plaintiff $51,573.75 for tuition payments as separate from the 2011 order directing him to pay her $48,738.15.

Our review of the record convinces us that none of these arguments is of sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). The parties' arguments reduce to quarrels with the judge's fact-finding, which we are simply in no position to reject. As the Supreme Court has unequivocally held, "an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108 (1997)). Bearing in mind Judge Jayne's reminder that "the best and most accurate record (of oral testimony) is like a dehydrated peach; it has neither the substance nor the flavor of the peach before it was dried," Trusky v. Ford Motor Co., Lincoln-Mercury Div., 19 N.J. Super. 100, 104 (App. Div. 1952), our deference to the Family Part's fact-finding is rooted in "the family courts' special jurisdiction and expertise in family matters." Cesare, 154 N.J. at 413.

A-5001-17T3

Having reviewed this entire record, we are convinced our customary deference is particularly appropriate here. No doubt the trial judge was confronted with a number of factually convoluted and intertwined claims for which there was long history and little documentation. There is certainly sufficient evidence in the record to support his conclusions on each issue presented. Accordingly, we affirm, substantially for the reasons expressed in Judge Rogers cogent and comprehensive decision from the bench on May 21, 2018.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION